ROLLAND RAY ROTHERT, a/k/a Rolland R. Rothert, Plaintiff-Counterdefendant-Appellant and Cross-Appellee, *v.* ROBERT HENRY ROTHERT, Indiv. and as Adm'r of the Estate of Emma E. Rothert, Deceased, *et al.*, Defendants-Counterplaintiffs-Appellees and Cross-Appellants.—(Rolland Douglas Rothert *et al.*, Defendants-Appellees.)

Fourth District   No. 17535

Opinion filed October 20, 1982.—Rehearing denied November 12, 1982.

Edward F. Casey, of Casey & Casey, of Springfield, for appellant.

Kenneth H. Otten, of Nafziger & Otten, of Springfield, for appellees.

JUSTICE MILLS delivered the opinion of the court:
We deal here with *owelty.*
*Owelty* is "the amount paid or secured by one owner to another to equalize a partition of property in kind." Webster's Third New International Dictionary 1612 (1976).

### BACKGROUND
This partition action involves two farms in Sangamon County. The farms are owned by two brothers and a sister: plaintiff, Rolland Rothert, and defendants, Robert Rothert and Kathryn Hill (previously Kathryn Rothert). The parties inherited the farms from their father, William Rothert, who died intestate in 1922. William's survivors were

his wife, Emma Rothert, and his three children, Rolland, Robert, and Kathryn. Emma died in 1973 and son Robert acted as the administrator of her estate. Plaintiff Rolland has farmed the 160-acre farm in Chatham Township (the Auburn farm) for more than 30 years. Defendant Robert has farmed the 114-acre farm in Cartwright Township (the Pleasant Plains farm) for more than 30 years and has lived on the farm for substantially all of his life.

In 1978, plaintiff filed a complaint in chancery in case number 158—78 seeking partition of the Auburn farm and reimbursement for two-thirds of the costs of improvements made thereon. The major improvements were a new barn, four new grain bins, and a basement that was finished off as living quarters. Named as defendants in this case were Robert Rothert (individually and as administrator of the estate of Emma Rothert), Oda Rothert (Rolland's wife), Rolland Douglas Rothert (Rolland's son), and Kathryn Hill. Defendants Robert and Kathryn filed an answer and counterclaim seeking partition and other relief including an accounting of the farm operation over a period of years.

Also in 1978, Rolland filed a complaint in partition in case number 159—78, seeking partition of the Pleasant Plains farm. Robert, Kathryn, and Jean Rothert (Robert's wife) were named as defendants in this case. General Telephone Company of Illinois was also named as a defendant because of an alleged easement. Again, defendants Robert and Kathryn filed an answer and a counterclaim seeking partition. Robert also sought a lien for improvements he had made on the property and reimbursement from plaintiff for crop expenses.

The two cases were consolidated by court order and tried on September 17 and 18, 1980. A judgment of partition was entered on December 9, 1980, in the consolidated cases. It was adjudged that Rolland, Robert, and Kathryn each owned an undivided one-third interest in each of the farms. It was further adjudged that Rolland was entitled to the enhanced value of the south 80 acres of the Auburn farm for having constructed the basement home. Upon partition in kind, the court ordered that the basement home be included in the parcel assigned to Rolland without charging him for the enhanced value.

Pursuant to article XVII of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 17—101 et seq.) (Partition Act), three commissioners were appointed and ordered to partition the premises. The commissioners submitted a 48-page appraisal to the court with a letter stating that there could not be a reasonably equitable division of the farms using land only. However, in the letter, the commissioners recommended a division, based on the appraisal, using land and cash.

The recommendation was as follows:

| | |
|---|---|
| Auburn Farm | $608,000 |
| Pleasant Plains Farm | 319,648 |
| Total Value | $927,648 |
| 1/3 Value | $309,216 |

| | |
|---|---|
| One would receive the Pleasant Plains farm | $319,648 |
| and pay the other two a total of | -10,432 |
| | $309,216 |

| | |
|---|---|
| One would receive the improved 80 acres at Auburn lying south of the road and valued at $3,850 per acre | $308,000 |
| and receive payment of | +1,216 |
| | $309,216 |

| | |
|---|---|
| One would receive the unimproved 80 acres at Auburn lying north of the road and valued at $3,750 per acre | $300,000 |
| and receive payment of | +9,216 |
| | $309,216 |

Rolland filed objections to the commissioners' report, maintaining that the value assigned to the Auburn farm was improper because of the addition of $300 per acre for coal underlying the farm. He also objected to the commissioners' recommendation of a division in kind with cash payments.

Following a hearing on the objections, the trial court discounted the value of the coal on the Auburn farm as being too speculative and determined that certain improvements should not have been included in the value of the Pleasant Plains farm but otherwise confirmed the commissioners' report. The court ordered that Robert be awarded the 114-acre Pleasant Plains farm, that Kathryn be awarded the north 80 acres of the Auburn farm, and that Rolland be awarded the south 80 acres of the Auburn farm. Robert was ordered to make payments of $12,260 each to Rolland and Kathryn to equalize the division of the farms. The judgment was based on the following calculations:

| | | |
|---|---|---|
| Auburn Farm | $560,125 | |
| Pleasant Plains Farm | 316,842 | |
| Total Value | $876,967 | |
| 1/3 Value | $292,322 | |

| | |
|---|---|
| Robert receives Pleasant Plains farm | $316,842 |
| and pays owelty to Kathryn and Rolland | -24,520 |
| | $292,322 |

| | |
|---|---|
| Kathryn receives north 80 acres of Auburn | $280,062 |
| farm and owelty from Robert | +12,260 |
| | $292,322 |

| | |
|---|---|
| Rolland receives south 80 acres of Auburn | $280,062 |
| farm and owelty from Robert | +12,260 |
| | $292,322 |

The trial court subsequently made an express written finding pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)) that there was no just reason for delaying enforcement or appeal.

Plaintiff appeals from the judgment of the trial court and asks this court to reverse the judgment and order a public sale of the farms, or in the alternative, order that a new trial be granted. Defendants cross-appeal from that part of the judgment that discounts the value of the coal in the valuation of the Auburn farm. Defendants also cross-appeal from an award of attorney fees to plaintiff.

I

Plaintiff argues that the trial court's judgment, ordering an unequal division of the farms with payments of owelty, was improper.

Section 17—106 of the Partition Act (Ill. Rev. Stat. 1981, ch. 110, par. 17—106) provides that, when a court orders partition, it shall appoint three commissioners to make the partition. The commissioners are to allot "the several shares to the respective parties, quality and quantity relatively considered, according to their respective rights and interests as adjudged by the court ***." (Ill. Rev. Stat. 1981, ch. 110, par. 17—108.) If the commissioners find the premises are not susceptible of division without manifest prejudice to the parties, the commissioners are to value each piece of property separately. The commissioners are then directed to make a written report to the court

showing what they have done. (Ill. Rev. Stat. 1981, ch. 110, par. 17—109.) Section 17—116 of the Act (Ill. Rev. Stat. 1981, ch. 110, par. 17—116) provides that if the commissioners report that the premises cannot be divided without manifest prejudice to the owners, the court shall order the premises sold at public sale.

■ The Partition Act makes no reference to an unequal division of the premises with a payment of owelty. However, the inherent power of the court sitting in equity to make such a division has long been recognized. (*Stortz v. Ruttiger* (1911), 249 Ill. 494, 94 N.E. 181; see *Miller v. Miller* (1980), 88 Ill. App. 3d 893, 411 N.E.2d 118.) The law favors a division of land in kind, rather than a division of proceeds from a sale of the land and, therefore, an unequal division with owelty is preferred over a sale of the premises. See *Harris v. Johnson* (1976), 42 Ill. App. 3d 751, 356 N.E.2d 1107; *Miller.*

Plaintiff argues that the trial court's order must be reversed because the commissioners were not authorized by the trial court to recommend an unequal division with owelty and that their "unauthorized" recommendation in some way negated the court's inherent power in equity to enter such an order. Plaintiff quotes language from *Stortz* which purportedly imparts merit to this argument.

In *Stortz*, a suit was brought for the partition of 66 acres of land. The plaintiff owned an undivided one-third interest in the land and the defendant owned an undivided two-thirds interest. Commissioners were appointed and reported that they had allotted and set off to the plaintiff 22 acres and to the defendant 44 acres. They further reported that the premises were not susceptible of any other division without manifest prejudice to the parties and that in order to make the division fair and equitable the defendant should be required to pay the plaintiff $1,166 as owelty. The defendant filed several objections to the report. These objections were overruled by the trial court and a decree was entered confirming the report of the commissioners. The supreme court reversed and remanded the decree of the trial court and stated:

> "While this court has held a court of equity may decree a pecuniary sum as owelty in order to equalize the shares of the parties in a partition [citations] the power to do this is in the court and not the commissioners. Before an unequal partition can be ordered made and equalized by awarding owelty it must be so ordered by the court, and where the parties do not agree, the amount of owelty must be fixed and determined by the court. Unless otherwise ordered by the decree the commissioners must divide the premises equally between the parties according

to their respective rights, and if they cannot do that without prejudice to the parties they cannot make partition but must value each tract or parcel and so report to the court. 'The court must see that the requirement of owelty is equitably necessary, that the amount required is fair, and that its payment is not so imposed upon a party as to be unreasonably burdensome, considering both the condition of the property and the party.' [Citation.]" 249 Ill. 494, 499-500, 94 N.E. 181, 183.

Apparently, the commissioners in *Stortz*, after finding that the land was not susceptible to equal division, failed to value the parcels of land. Without such a valuation, the trial court had no basis for determining whether owelty was necessary or whether the amount recommended by the commissioners was fair and reasonable. For this reason, it was necessary for the supreme court to reverse and remand the order for the commissioners to value the land as they were originally instructed by the trial court's decree.

In the present case, the commissioners did what they were directed to do. They inspected the land, determined that it was not susceptible to an equal division without manifest prejudice to the parties, valued the land and then reported their findings to the trial court. The commissioners' report provided the trial court with sufficient information to determine whether owelty was necessary and to determine the amount of owelty that would be fair and reasonable. The fact that the commissioners suggested a division of property using land and cash is of little moment. Given the values of the two farms, it was a simple matter of arithmetic to derive the pecuniary amounts that would be required to equalize the shares when the two farms were divided among the three parties. The trial court was more than competent to make such a calculation without the aid of the commissioners and, therefore, the fact that the commissioners volunteered the calculations is insignificant. Furthermore, the commissioners must have made similar calculations in the process of determining whether an equal division was feasible and, consequently, the calculations could have been properly included in the report to show that an equal division was not possible.

■■ While it would have been better practice for the trial court to provide in its order authorization for the commissioners to recommend an unequal division of land with owelty, the failure to do so does not constitute reversible error on the facts of this case.

## II

After the hearing of plaintiff's objections to the commissioners'

report, the trial court determined that the commissioners incorrectly included in the value of the Auburn farm $300 per acre based on the coal underlying the farm. The trial court found that the value of the coal was speculative and discounted the value of the Auburn farm by $300 per acre. Defendants cross-appeal from this portion of the trial court's judgment and ask that the commissioners' valuation of the Auburn farm be reinstated.

The commissioners' findings will not be sustained if they are against the manifest weight of the evidence. (See *Anderson v. Anderson* (1978), 62 Ill. App. 3d 468, 378 N.E.2d 1079.) In the present case, one of the commissioners testified at the hearing of objections to the commissioners' report that the $300-per-acre figure for the coal was obtained by contacting a secretary at Nicor Minerals, Inc., who indicated that the "fee simple value of those coal rights at the date of the appraisal was $300 per acre." However, the commissioner also testified that, after the date of the appraisal, he spoke with the secretary and the land manager at Nicor and they indicated that Nicor was no longer seeking fee simple rights in coal but only leases.

■ It is evident that the commissioners' report was based on the fact that, at one time, Nicor Minerals, Inc., was offering to buy fee simple interests in coal rights at $300 per acre. Since these offers no longer existed at the time of the hearing, the addition of $300 per acre to the value of the Auburn farm based on the coal rights was against the manifest weight of the evidence. Accordingly, we affirm the trial court's decision discounting the value of the coal rights in determining the value of the Auburn farm.

### III

Defendants cross-appeal from the trial court's judgment awarding attorney fees to plaintiff. The judgment states that plaintiff "shall recover as costs his reasonable attorney fees and costs incurred herein, as heretofor provided in paragraph H of judgment entered December 9, 1980; determination of the amount thereof is reserved." Paragraph H of the December 9 judgment provided that plaintiff "shall recover as costs his reasonable attorney fees and costs incurred herein; determination of the amount thereof is reserved."

Neither party has addressed the issue of whether this part of the judgment is appealable. Nevertheless, the appellate court has a duty to consider its jurisdiction to hear an appeal whether or not the issue has been raised by the parties. *E. M. Melahn Construction Co. v. Village of Carpentersville* (1981), 100 Ill. App. 3d 544, 427 N.E.2d 181.

In *Laterza v. Murray* (1954), 2 Ill. 2d 219, 117 N.E.2d 779, the

trial court, in a partition action, allowed attorney fees and costs to the plaintiff but reserved jurisdiction for an accounting to determine the amount of the allowance. The defendant appealed from the trial court's decree ordering the partition of the premises and also challenged the award of attorney fees to the plaintiff. The supreme court said, "Since no allowance was ordered, and determination of the matter was reserved in the circuit court, there is nothing for this court to review in this respect." (2 Ill. 2d 219, 223, 117 N.E.2d 779, 782.) The supreme court affirmed the decree of the circuit court.

■ We follow the supreme court's decision in *Laterza* and hold that the issue of attorney fees is not reviewable at this time.

The judgment of the trial court is affirmed.

Affirmed.

GREEN, P.J., and TRAPP, J., concur.