JOHN STEINBRECHER, Plaintiff-Appellee, v. JEROME STEINBRECHER *et al.*, Defendants (Rosemary C. Steinbrecher, Defendant-Appellant).—JOHN STEINBRECHER, Plaintiff-Appellee, v. JEROME STEINBRECHER *et al.*, Defendants-Appellants (Hinsdale Nurseries, Inc., *et al.*, Defendants).—JOHN STEINBRECHER, Plaintiff-Appellee, v. JEROME STEINBRECHER, Defendants-Appellants (Hinsdale Nurseries, Inc., *et al.*, Defendants).

Second District   Nos. 2—98—1010, 2—98—1406, 2—98—1564 cons.

Opinion filed January 26, 2000.—Rehearing denied April 19, 2000.

Douglas C. Tibble and Daniel P. Duffy, both of McBride, Baker & Coles, of Oakbrook Terrace, for appellant Rosemary C. Steinbrecher.

Jerome A. Steinbrecher, of Chicago, for appellant *pro se*.

Bruce S. Terlep and Matthew D. Jacobson, both of Swanson, Martin & Bell, of Wheaton, for appellee.

JUSTICE GALASSO delivered the opinion of the court:

Defendants Jerome and Rosemary Steinbrecher appeal from orders of the circuit court of Kendall County that (1) ordered the sale of property they owned along with plaintiff, John Steinbrecher, as tenants in common; (2) denied a motion for change of venue; and (3) granted the sale of the subject property.

On January 21, 1991, Francis Steinbrecher (Francis) died intestate. He was survived by three children, John, Jerome, and Rosemary. At the time of his death, Francis owned three noncontiguous parcels of property (the property) located in Kendall County. Two of the parcels were improved with houses and outbuildings. *In toto*, the property was comprised of 409 acres. It is undisputed that Francis's children were the heirs and beneficiaries of his estate and that they held title to the property as tenants in common. On November 28, 1995, John Steinbrecher (plaintiff) filed a complaint for partition of the subject property, pursuant to the Code of Civil Procedure (Code) (735 ILCS 5/17—101 *et seq.* (West 1994)). Named as defendants in the suit were his siblings, Jerome and Rosemary Steinbrecher, Hinsdale Nurseries, Inc., C.D.'s Tree Service, David Mukelson, and Farm Credit Services of Northen Illinois. Jerome and Rosemary are the only defendants involved in this appeal.

On April 26, 1996, plaintiff filed a motion to appoint a commissioner, wherein he requested that the trial court appoint a single com-

missioner to determine the feasibility of partitioning the property. On August 30, 1996, the trial court appointed Michael Crowley as "substitute commissioner." Commissioner Crowley subsequently appraised the entire property's market value, as of August 30, 1996, at $4,500,000. However, when Commissioner Crowley appraised the three parcels that comprised the property separately, the total value of the property was estimated to be $4,859,000. At the partition trial held in August of 1997, Commissioner Crowley testified that the property was incapable of being equitably partitioned in kind among the three heirs. On October 28, 1997, the trial court approved Commissioner Crowley's report and found that "the whole or any of the premises sought to be partitioned cannot be divided without manifest prejudice to the owners thereof" and that "the entire property at issue be *** sold at public sale." The court set a *supercedeas* bond of $3 million. On December 1, 1997, Jerome and Rosemary filed separate notices of appeal. Subsequently, the defendants' appeals were dismissed by this court for reasons that will be discussed below.

On January 6, 1998, the trial court granted plaintiff's motion to appoint the real estate agency of Dolan and Murphy (Dolan) as the exclusive listing agent for the property. The "Exclusive Right to Sell Contract," which was subsequently executed, set a listing price of $4,500,000 for the property. Subsequently, Dolan submitted three offers to purchase. Inland Real Estate Development Corporation offered $3,500,000 for the property, while "Robert Hamman or his nominee" offered $3,020,000, and Moser Enterprises, Inc. (Moser), offered $3,550,000. On August 19, 1998, the trial court entered an order "approving the offer/bid tendered by Moser Enterprises, Inc."

On September 24, 1998, plaintiff filed a "Report of Sale and Petition for Confirmation." The report stated, *inter alia*, that the real estate closing on the property had occurred on September 18, 1998, and that the net proceeds of the sale were $2,967,392.60. On the same date, the trial court entered two orders, only one of which is of concern to this court. In that order, the trial court *inter alia* approved the report of sale, granted the petition for confirmation of sale, and ordered the deed to be recorded. On September 25, 1998, Rosemary filed a motion to stay the court's order of September 24, 1998. On October 23, 1998, Moser filed its petition to intervene. Jerome filed his notice of appeal from the September 24 order on October 28, 1998. At the hearing held on October 30, 1998, Moser's petition to intervene was granted. On the same date Rosemary filed *instanter* what, in essence, was a motion to reconsider the order confirming the sale of the property. The trial court denied this motion, and Rosemary filed her notice of appeal on November 13, 1998.

On appeal, defendants make the following arguments, namely, (1) whether the trial court had jurisdiction over the partition suit; (2) whether the trial court erred in ordering the entirety of the land to be sold; (3) whether the trial court's requirement of a $3 million *supercedeas* bond and the trial court's refusal to stay enforcement of the sale decree were abuses of discretion; (4) whether the conduct of the sale of the property was erroneous; and (5) whether Judge Hogan and "the judges of Kendall County" were required to recuse themselves from presiding over the subject cause of action.

Before addressing the issues raised on appeal, we will deal with plaintiff's motions to dismiss this appeal, which were ordered taken with the case. Plaintiff argues that this court does not have jurisdiction over this appeal on the basis of lack of jurisdiction and mootness. To eliminate at least some of the confusion surrounding the various appeals, we will address the appeals separately.

■ Before doing so, we note that Jerome has never filed an appellate brief in this matter and that he has not joined the briefs filed by Rosemary. A reviewing court has the inherent authority to dismiss an appeal for an appellant's failure to file a brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131 (1976). Accordingly, Jerome's appeal is dismissed for failure to file a brief with this court.

### Appeal of Order for Sale of the Property

Initially, plaintiff argues that this court lacks jurisdiction over issues related to the sale of the property because this court has previously affirmed the October 28, 1997, order, which directed the sale of the property. Rosemary argues that this court ruled that the appeal was untimely as this order was not a final and appealable order and that this court's dismissal of her appeal in no way prejudices her instant appeal. The factual background to this argument is as follows. After a trial on the partition suit was held in August of 1997, the trial court entered an order on October 28, 1997. In it, the trial court found that the parties were the three owners of the subject property and that each held an undivided one-third interest in it as tenants in common. This order also approved Commissioner Crowley's report, finding that, "[t]he whole or any of the premises sought to be partitioned cannot be partitioned without manifest prejudice to the owners thereof" and "the entire property at issue be and here sold at public sale." On December 1, 1997, Rosemary filed a notice of appeal regarding the October 28, 1997, order. On December 29, 1997, this court ordered Rosemary to file her appellate brief on or before March 10, 1998, which she failed to do. On March 10, 1998, Rosemary filed for an

extension of time to file her appellate brief. This court extended the time for Rosemary to file her appellate brief until June 2, 1998.

On June 3, 1998, a day after she was to have filed her appellate brief, Rosemary filed another notice of appeal, a motion to combine appeals, and for an extension of time to file her brief. This second notice of appeal was related to a number of trial court rulings regarding the process of selling the property. Plaintiff filed a motion to dismiss all the orders appealed from in Rosemary's second notice of appeal, arguing that all were interlocutory in nature and that this court had no jurisdiction over them. Further, plaintiff opposed Rosemary's motions to combine the appeals and for an extension of time to file her brief. On June 19, 1998, this court entered an order (1) denying Rosemary's motion to consolidate appeals; (2) granting plaintiff's motion to dismiss Rosemary's second notice of appeal on the grounds that the trial court's orders were not final and appealable; and (3) dismissing Rosemary's first appeal on the basis that there had been no final order entered by the trial court.

■ This court's ruling had the effect of making it the law of the case that the October 28, 1997, order to sell the property was not final. Added to this is the fact that the trial court's order of October 28, 1997, did not contain the necessary Rule 304(a) (155 Ill. 2d R. 304(a)) language stating there was no just reason for delaying enforcement or appeal. As a result, we conclude that the subject notice of appeal by Rosemary was without effect and that its dismissal did not prevent her from subsequently appealing from the order to sell the property.

### Appeal from Denial of Motion for Change of Venue

Further, on June 17, 1998, Rosemary filed a motion for change of venue, arguing therein that Judge Thomas Hogan had demonstrated a "flagrant disregard of the laws governing the *** case, or which should govern it, and [demonstrated] conduct evincing either uncontrolled bias against *pro se* litigants generally *** or some personal or venal motivation." On July 1, 1998, Judge Grant Wegner denied the motion for change of venue, and Rosemary filed her notice of appeal on August 3, 1998.

Plaintiff argues *inter alia* that the order denying the motion for change of venue is interlocutory and that this court is without jurisdiction over it. Plaintiff also argues that Rosemary failed to file the notice of appeal within the required 30-day period. Rosemary contends that the order underlying this appeal was within the procedural progression of the order entered on September 24, 1998, and was, therefore, "drawn into" this consolidated appeal.

■ Denial of a motion for change of venue is not a final order, nor does any supreme court rule authorize an appeal from that type of interlocutory order. *Mexicali Club, Inc. v. Illinois Liquor Control Comm'n*, 37 Ill. App. 3d 797, 799 (1976). Thus, this particular motion for a change of venue, which alleges biased conduct and flagrant disregard of the law, does not fall within the exceptions to the general rule that only final orders may be appealed. Moreover, even if there were appealable orders involved in this appeal, the fact that the notice of appeal was filed over 30 days from the entry of the July 1, 1998, order denying the motion for change of venue deprived this court of jurisdiction over this appeal. However, we agree with Rosemary that the July 1, 1998, order fell within the procedural progression to the judgment underlying her subsequent appeal related to the September 24, 1998, order and, thus, was "drawn into" this later appeal. See *Sarah Bush Lincoln Health Center v. Berlin*, 268 Ill. App. 3d 184, 187 (1994). Accordingly, we conclude that Rosemary's change of venue issue can be addressed in this appeal.

Appeal from the Order Approving the Sale of the Property

On September 24, 1998, the trial court entered an order that provided for the sale and transfer of the property to the purchaser, Moser. The order further provided that the proceeds of the sale were to be placed with Chicago Title Company and that funds from the proceeds were to be distributed to satisfy the outstanding mortgage on the property, state transfer taxes, brokers' fees, Internal Revenue Service judgments, and title charges. The order further stated, "The Court specifically finds that its orders regarding the report of sale, confirmation of sale and motions by Rosemary Steinbrecher are final and appealable pursuant to Ill. Sup. Ct. R. 304(a); there is no just reason to delay enforcement or appeal of paragraphs 2, 3, 4, and 5 of this order." On September 25, 1998, Rosemary filed a motion entitled, "Motion for Stay of Judgment Pending Appeal and Rehearing Re: Deposition." This motion was noticed for hearing on October 2, l998. On October 2, 1998, the hearing on Rosemary's motion to stay was continued to October 30, 1998.

During the October 2, 1998, hearing, the trial court appeared to forbid Rosemary from filing any further motions prior to October 30, 1998. The following colloquy is taken from the October 2 hearing, where Rosemary appeared *pro se*:

"THE COURT: *** I told you a long time ago that I'm not going to hear this thing every other day. Just because you want to file a motion doesn't mean I'm going to hear it. I told you to file things once a month. We've set a date for a motion sometime later in this month. I don't know what the date is—

MS. STEINBRECHER: October 30th.

THE COURT: —but you do.

MS. STEINBRECHER: October 30th, your Honor.

THE COURT: Now, yet, you continually file motions. You continually get the—the Clerk's office has to bring this file down here. The other attorney has to come in. He was here all morning. And I've told you in the past I'm not going to hear this just because you want to file a motion and notice it up on whatever day you want to notice it up. Now, I will hear the—everything you have, whatever it is, on the next court date, which is, I think you said, the 24th of October.

MS. STEINBRECHER: I believe it's the 30th. ***

THE COURT: Whatever date it is.

MS. STEINBRECHER: I believe the only thing scheduled there is a hearing for adjudication of the Hinsdale Nursery matter set for October 30th of this month.

THE COURT: Fine. Then notice it all up for that date.

MS. STEINBRECHER: All right.

THE COURT: Now, if you do this again, I'm going to start imposing sanctions against you. We're not going to be disrupting everybody's life simply because you want to file a motion, especially when I've given you a date in the future.

MS. STEINBRECHER: Your Honor, the date in the future had nothing to do with this particular issue.

THE COURT: What difference does that make? It's court date where everybody is supposed to be here, correct? Do you think I'm going to sit here and have everybody come in here every day just because you want to file a motion and you want to be heard on this day because you happen to be available?

MS. STEINBRECHER: I thought time might be of the essence, in fairness to the parties.

THE COURT: I doubt, in this case, time is of the essence to anybody. As I said, do it again and I'm going to start imposing sanctions against you. Okay?"

On October 30, 1998, Rosemary filed a motion entitled "Motion to Declare Void the Sale of Property to Moser Enterprises, Inc." This motion was set for hearing on the same day. In the order of October 30, 1998, the trial court (1) denied Rosemary's motion to void the sale to Moser; (2) denied Rosemary's motion to stay the September 24, 1998, order; (3) granted Moser's petition to intervene; and (4) granted Moser's motion for possession of the property and ordered Rosemary to surrender possession of the property to Moser on November 13, 1998.

Rosemary filed a notice of appeal on November 13, 1998, wherein

she appealed the orders of September 24, 1998, October 16, 1998, and October 30, 1998. Rosemary filed an amended notice of appeal on December 1, 1998, in which she stated that she would be asking the appellate court to determine if the trial court had jurisdiction to "convey property in this partition action because no essential aspect of the statute was followed."

Plaintiff maintains that Rosemary's September 25, 1998, motion did not constitute a motion to reconsider, which would toll the time for filing a notice of appeal. Plaintiff further contends that Rosemary's October 30, 1998, motion was, in effect, a motion to reconsider and that, for it to toll the time in which to file the notice of appeal, it had to be filed within 30 days of the September 24, 1998, order. In response, Rosemary argues that, in effect, the trial court at the October 2, 1998, hearing told Rosemary not to file any motions for a month or she would face sanctions. She further asserts that, because of these warnings by the trial court, she thought that she could not file any motions until the end of October.

■ Without getting into the issue of whether Rosemary's motion of September 25, 1998, was a motion to reconsider the order approving the sale of the property to Moser, we conclude that the trial court's statements to Rosemary at the October 2 hearing were confusing and likely had the effect of keeping her from filing her motion to reconsider within the applicable period. This conclusion is buttressed by the fact that, as soon as it appeared that the trial court would permit her to file a motion, she filed what was essentially a motion to reconsider on October 30. Rosemary then appealed within 30 days of the denial of the motion to reconsider. *Pro se* litigants are generally supposed to know procedural rules, but when, as here, a trial court threatens sanctions for the filing of motions, such a litigant must be given considerable leeway in meeting procedural requirements. We find that under these circumstances, Rosemary's October 30, 1998, motion to reconsider and her November 13, 1998, notice of appeal served to toll the 30-day period for appeal and were timely.

### Mootness

■ Plaintiff further maintains that this appeal is moot. He argues that because the property was conveyed to Moser, a nonparty, on September 24, 1998, under Supreme Court Rule 305(i) (155 Ill. 2d R. 305(i)), Rosemary's appeal from that order is rendered moot. In response, Rosemary contends that Moser is a party to the lawsuit, as its petition to intervene was granted by the trial court. Thus, Rosemary argues that Supreme Court Rule 305(i) does not apply here.

There is little case law of relevance to this issue. It appears that Moser's status as a party to this cause of action deprives Moser of the

protection provided nonparty purchasers by Supreme Court Rule 305(i). Moreover, as will be discussed below, the trial court erred in ordering the property sold pursuant to the Code. As a result, the sale to Moser is without effect. Accordingly, we find that the appeal is not moot and that this court should address the issues raised by Rosemary.

Initially, Rosemary maintains that the sale is void as a matter of law because the circuit court of Kendall County was required to decline jurisdiction over the partition suit as the property at issue was already the subject of a Cook County probate proceeding. In support, she points to the following language of section 17—101 of the Code:

"If lands, tenements or hereditaments held in joint tenancy or tenancy in common are situated in 2 or more counties, the venue may be in any one of such counties, and the circuit court of any such county first acquiring jurisdiction shall retain sole and exclusive jurisdiction." 735 ILCS 5/17—101 (West 1996).

Rosemary further argues that there is no dispute that the land and hereditaments held in tenancies in common existed in both Cook and Kendall Counties. She also contends that the circuit court of Cook County was the first circuit court to acquire jurisdiction over the properties and, as such, had the power to grant the relief requested of the circuit court of Kendall County. Rosemary concludes that, in light of the statute and the pending probate action, the circuit court of Kendall County was required to decline jurisdiction over the partition complaint.

In response, plaintiff argues, *inter alia*, that in November 1995 defendants were told by the probate court of Cook County that title to the property had vested in the three siblings and that they could manage and operate all aspects of the property as they saw fit. For further support, plaintiff cites *In re Estate of Lanterman*, 122 Ill. App. 3d 982 (1984).

On November 30, 1995, the probate court of Cook County stated the following in open court with the parties present: "But as far as I'm concerned, title vested in [the parties] four years ago, and I have addressed that all throughout this proceeding." The trial court later stated to the parties:

"Do what you like with [the property], sell it, keep it, file actions between each other regarding the property. *** Now, heirs of the Steinbrecher Estate, you understand you have no restrictions as of November 30th. You can go about this property according to what's in your best interest, that is, your third share."

Initially, we note that the primary case cited by plaintiff holds that the fact that an estate has not been settled will not necessarily prevent the court from awarding a decree of partition. *In re Estate of*

*Lanterman*, 122 Ill. App. 3d 982, 987 (1984). In *Lanterman*, the court pointed to several complications that prevented a determination of the exact interests taken by the parties in the estate. As a result, the *Lanterman* court concluded that the trial court had properly stayed the partition action until the estate was closed and the will contest was resolved. Here, there are no such complications to prevent the award of a partition decree. As the probate court of Cook County stated above, the title to the land vested in the parties in 1991, and it further found that there was nothing to keep them from "filing actions" against each other.

Further, the cases cited by Rosemary to support her conclusion that the circuit court of Kendall County should have declined to take jurisdiction over the partition suit are not persuasive. For example, she cites *In re Marriage of Baltzer*, 150 Ill. App. 3d 890, 895 (1986), for the proposition that, under general principles of priority, the court first acquiring jurisdiction over the matter retains jurisdiction, to the exclusion of all other courts, to dispose of the entire controversy. This proposition has little to do with the appeal at bar, where the partition suit is in reality a separate controversy from whatever issues arose before the probate court.

Under these circumstances, we see no reason for the circuit court of Kendall County to have declined jurisdiction over the instant cause of action, particularly when the subject property was located in that county.

■ Next, Rosemary generally argues that the trial court committed reversible error in ordering the entirety of the land to be sold. She first argues that the property was not subject to partition because the agreement (Agreement) entered into by the heirs of the estate, pursuant to section 2032A of the Internal Revenue Code (26 U.S.C.A. § 2032A (West 1989)), constituted an express or implied agreement not to seek partition or sale of the property underlying the election. Rosemary maintains the Agreement expressly required that the property be owned by the heirs for 10 years. She further contends that implicit in the signing of the Agreement was that ownership of the property would be maintained in such a manner so as not to undermine the favorable section 2032A status, *i.e.*, none of the three owners would initiate a partition suit within the 10-year period. In response, plaintiff argues that the parties never agreed explicitly or implicitly not to partition the property within the 10-year period. He maintains that he had an absolute right to file the subject partition action.

In Rosemary's briefs, she fails to cite to that portion of the record on appeal that contains the Agreement signed by the parties. It is not this court's duty to page carefully through this voluminous record in

hopes of uncovering the Agreement. Further, without the actual Agreement for reference, we are unable to determine whether the parties expressly or impliedly agreed not to partition the property for 10 years. Accordingly, we find this argument is waived for failure to comply with Supreme Court Rule 341(e)(6). 177 Ill. 2d R. 341(e)(6).

■ Next, we address Rosemary's contention that the trial court's finding that the land was not subject to division was against the manifest weight of the evidence. She maintains that there was no evidence of manifest prejudice to the parties and that the evidence actually supported a three-way division of the property. Plaintiff maintains that the only evidence in the record reveals that the property was incapable of being fairly divided.

The only evidence at the trial that related to whether the property was subject to division was that of Commissioner Crowley. He stated that the property was divided into three noncontiguous parcels. The land on these parcels ranged from farmland to heavily wooded acreage on a flood plain. In the following colloquy, Commissioner Crowley explained his conclusions regarding the division of the property:

"In the process of analyzing the relative market value of the three primary component parcels, I arrived at a situation in which two of the three parcels were both geographically and, in my opinion, value-wise separated.

In other words, what I call Parcel 1 and what I call Parcel 2, I further divided into two segments, because in each case the two segments were divided by a roadway.

I then analyzed, in effect, five separate parcels to arrive at a specific market value of each of those five parcels. I then took the five different parcels and tried to come up with a reasonable combination thereof that would provide three—three eventual components, if you will, of equal value.

I was not able to come up with three components that were, in fact, of equal value, and I indicate in my report in the summary the three—the combination, I should say, that most closely arrived at three relatively similarly valued parcels."

Later in his testimony, Commissioner Crowley engaged in the following colloquy with plaintiff's counsel.

"Q. In the additional analysis section of your report, you arrived at the conclusion, am I correct, that you were unable to recommend an equitable distribution of these assets?

A. I was unable to recommend one that would provide equal parts. The three that I did—the three divisions, the three combinations that I did include in [the report], differed from the most valuable to the least valuable by approximately $200,000.

Q. So unless we make some sort of concession for the financial

inequality between these parcels, it is your opinion, am I correct that an equitable distribution or partition of this land in kind is not feasible.

A. That is my conclusion.

Q. And is that conclusion based upon a reasonable degree of certainty?

A. It is."

Further, the commissioner's report contained the following language:

"One of the purposes of this analysis is to recommend to the client an equitable distribution of the various segments and parcels of the subject property among three parties. The appraiser considered various permutations of the five various segments, with individual values of $1,595,000; $1,608,000; $1,008,000; $426,000; and $220,000.

None of the combinations of these five segments resulted in three relatively equal units. The closest combination to this target was: the South Segment of Parcel #1 at $1,595,000, the North Segment of Parcel #1 at $1,608,000, leaving all of Parcel #2 at $1,434,000, and all of Parcel #3 at $222,000, for a total of $1,656,000 as the third unit.

While the first and second combinations resulted in relatively similar values, the third combination was substantially greater. And therefore, the appraiser, acting as the court appointed commissioner, was unable to recommend an equitable distribution of these assets among three parties unless other compensation was provided to the first two combinations and/or some concession was applied to the third."

In its letter of decision dated October 1, 1997, the trial court stated in pertinent part:

"In reviewing the testimony of Michael Crowley, Sr., *** I must agree with his decision that the land is not capable of being divided among the three heirs in question. The reasons that Mr. Crowley stated were that there are a number of parcels or sections split by Kennedy Road as well as the railroad right-of-way bisecting at least one lot and that, of the five parcels that he analyzed, some of the land was tillable, some of the land in a flood plain, and some of it was wooded.

It would be a momentous job to try to equitably divide the five parcels among the three heirs to the point where each one felt that they were getting an equal one-third value of the property regardless of whether it was sold or not. That being the case, and the heirs being unable to agree among themselves, it is the Order of this Court that the premises shall be sold at a public sale pursuant to the Statute."

Section 17—108 of the Code reads as follows:

"Duty of Commissioners. The commissioners shall enter upon the premises and, if the same are susceptible of division without *manifest prejudice* to the rights of the parties, they shall make partition thereof, allotting the several shares to the respective parties, quality and quantity relatively considered, according to the respective rights and interests as adjudged by the court ***. If the premises are not susceptible of division without *manifest prejudice* to the parties in interest, the commissioners shall value each piece or parcel separately." (Emphasis added.) 735 ILCS 5/17—108 (West 1994).

The parties have not produced any cases in which the term "manifest prejudice" has been defined. Black's Law Dictionary defines the word "manifest" as follows:

"Evident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident. In evidence, that which is clear and requires no proof; that which is notorious." Black's Law Dictionary 495 (5th ed. abridged 1983).

With that definition in mind, we address the trial court's conclusion that Commissioner Crowley could not devise a method of dividing the property that was not manifestly prejudicial to the parties' interests. Apparently, the property is not susceptible to being split between the parties so that each would get exactly a one-third share of the property. However, as noted above, Commissioner Crowley stated that he had formulated a division of the property in which the one-third shares of the property would have estimated values of $1,595,000, $1,608,000, and $1,656,000. The divergence in the estimated worth of these three shares is not particularly significant. It would appear that, with owelty payments, Commissioner Crowley could have arranged a fair and equitable division of the property. While the Code does not refer to an unequal division of property with owelty payments, the power of a court sitting in equity to fashion such a division has long been recognized. *Rothert v. Rothert*, 109 Ill. App. 3d 911, 916 (1982). As the *Rothert* court stated, "The law favors a division of land in kind, rather than a division of proceeds from a sale of the land and, therefore, an unequal division with owelty is preferred over a sale of the premises." 109 Ill. App. 3d at 916.

Moreover, as Rosemary points out, selling the property as a whole rather than dividing the land among the parties potentially serves to bring less of a return to the parties. As stated above, Commissioner Crowley estimated the values of the individual parcels to be $4,859,000, while the market value of the property when taken as a whole was

$4,500,000. From these figures, it would appear that the more manifestly prejudicial method of handling this matter would be to sell the property as a whole and divide the proceeds among the parties.

We note that, during oral argument, mention was made of a mortgage or mortgages on all or part of the property. Admittedly, entanglements created by any such mortgage(s) might make an equitable division of the property, with or without owelty payments, impossible. However, that is a matter to be addressed on remand, along with the possible equalization by owelty. Each of the heirs/owners would then have an opportunity to become the sole owner of a defined portion of the family's estate.

We conclude that the trial court's finding that the property could not be equitably divided was against the manifest weight of the evidence.

Next, Rosemary generally argues that the conduct of the sale of the property was clearly erroneous. Specifically, she argues that (1) the order authorizing the Dolan real estate agency to sell the property pursuant to an exclusive listing agreement contravened the legislature's abolition of fee officers; (2) the sale was not conducted as a public sale as required by statute; (3) the trial court failed to set off Rosemary's homestead interest, and the court-ordered sale without her consent is void; (4) the description of the property that the trial court purported to deed over was in conflict with the legal description of the property owned by the parties as tenants in common; and (5) the property was sold for an insufficient amount.

As this cause is being remanded to the trial court for further determination of the propriety of dividing the property among the parties, it is not necessary to address subissues (1), (3), (4), and (5). However, upon remand, it is possible that the trial court will again determine that the property cannot be divided without manifest prejudice to the parties and will have to be sold as a whole. In light of that possibility, we will address Rosemary's argument regarding whether a public sale, as required by the Code, was conducted. Rosemary argues that the sale conducted here was not a public sale that involved competitive bidding in a public place upon proper notice and that the trial court did not have the discretion to ignore the Code's directives. Plaintiff contends that the trial court had broad discretion in setting the terms and the notice of the sale. Plaintiff further argues that Rosemary's contention is not supported by the record.

The Code reads in relevant part:

"Sale of premises not susceptible to division. When the whole or any of the premises sought to be partitioned cannot be divided without manifest prejudice to the owners thereof, and the commis-

sioners appointed to divide the same so report, the court shall order the premises not susceptible of division to be sold at *public sale*, upon such terms and notice of sale as the court directs." (Emphasis added.) 735 ILCS 5/17—116 (West 1996).

The parties do not cite any authority that specifically defines a public sale. Black's Law Dictionary defines "public sale" as "Sale at auction of property upon notice to public of such. *** See also Sheriff's sale." Black's Law Dictionary 644 (5th ed. abridged 1983). Comparing this definition to the manner in which the sale of the property was conducted, we conclude that the trial court did not follow the proper procedure as contemplated by the Code. There was no notice of the property's sale to the public. Nor was there a sale at auction of the property. Instead, the trial court permitted the property to be exclusively listed with the Dolan real estate agency. Bids on the property went through Dolan, and the property was eventually sold to Moser. Plaintiff emphasizes that section 17—116 of the Code vests the trial court with discretion to set the terms and notice of the partition sale. We do not find that such discretion allows the trial court to ignore the plain language of the Code, which requires a public sale. Plaintiff's citation to *Sauter v. Pickrum*, 373 Ill. 541 (1940), is not persuasive. *Sauter* does not specifically address the issue of whether the failure to sell the property at public auction, which is preceded by notice of same, is fatal to the property's sale. We conclude that the manner in which the property was sold materially violated the Code's provision for a public sale.

Finally, Rosemary essentially argues that the circuit court of Kendall County mishandled her motion for a change of venue. She contends that, as a result of this alleged mishandling, all orders entered subsequently to the denial of the motion for change of venue should be found to be null and void. Plaintiff counters with the argument that the circuit court of Kendall County properly followed the relevant rules.

On June 17, 1998, Rosemary filed a motion for change of venue, alleging that Judge Hogan, who had presided over the partition suit, flagrantly disregarded the law and showed a bias against *pro se* litigants. On June 25, 1998, she filed an affidavit in support of the motion and subsequently filed an amended affidavit on July 1, 1998. On the same date, Judge Grant Wegner heard and denied the motion for change of venue. Judge Wegner had been mentioned in Rosemary's affidavit regarding certain rulings he had made early in the course of the proceedings. Specifically, Rosemary claims that it was a violation of section 2—1001(a)(3)(iii) of the Code of Civil Procedure (735 ILCS 5/2—1001(a)(3)(iii) (West 1996)) to permit Judge Wegner to preside

over the hearing on the subject motion. Said section reads: "Upon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition." Judge Wegner was not mentioned in the motion for change of venue, which restricted its allegations to Judge Hogan. As a result, we see no violation of section 2—1001(a)(3)(iii) and find this argument to be thoroughly without merit.

For the reasons stated above, we affirm the trial court's finding that it had jurisdiction over this cause of action. Further, we reverse the trial court's finding that the property could not be equitably divided among the parties and remand this cause for further proceedings consistent with this opinion. Finally, we vacate the sale of the property to Moser.

Affirmed in part; reversed and remanded in part; and vacated in part.

HUTCHINSON and RAPP, JJ., concur.