2001 UT 42

Robert M. CLAWSON, Elizabeth S. Clawson, Kevin H. Clawson, Roxanne C. Davis, Diana C. Furedy, W. Peter Poulsen, and Judith S. Poulsen, Plaintiffs and Appellees,

v.

Barnard SILVER, Cherry B. Silver, Ruth S. Silver, and Colorado National Bank, all as Trustees of the Harold F. Silver Kith and Kin Trust, and Bernard S. Silver, Ruth S. Silver, and Colorado National Bank, all as Trustees of the Harold F. Silver Family Trust, and John Does one through five, Defendants and Appellants.

No. 981497.

Supreme Court of Utah.

May 18, 2001.

Larry G. Moore, Salt Lake City, for plaintiffs.

R. Stephen Marshall, Kyle C. Jones, Salt Lake City, for defendants.

HOWE, Chief Justice:

## INTRODUCTION

¶ 1 Defendants Barnard S. Silver and Cherry B. Silver appeal from a summary judgment in favor of plaintiffs Robert Clawson and Elizabeth Clawson ordering that certain real property located in Wasatch County, of which the Silvers and the Clawsons are cotenants, be sold at public sale.

## BACKGROUND

¶ 2 Harold F. Silver, now deceased, and his second wife Ruth S. Silver conveyed real property upon which was situated their family cabin in Wasatch County to three of Harold's children and their spouses: Barnard S. and Cherry B. Silver, Elizabeth (Silver) and Robert Clawson, and Judith A. (Silver) and W. Peter Poulsen. The property has been divided by survey into three parcels, which we refer to herein as Lot 1 consisting of 3.37 acres, Lot 2 consisting of 2.30 acres, and Lot 3 consisting of 3.02 acres.[1] On Lot 1 is the family cabin, built by Harold F. Silver in 1946. The Poulsens built a cabin on Lot 2, and all of the parties have stipulated to the partitioning in kind of Lot 2 to them. No one takes issue with that division, and the Poulsens are not a party to this appeal.

¶ 3 The Clawsons commenced this action seeking an order that Lots 1 and 3 be sold at

---

1. The record includes the survey and plat maps created in 1991 at the joint expense of the Silvers, Clawsons, and Poulsens.

public sale. They alleged that over a period of many years, there have been difficulties between them and the Silvers as to the "use, maintenance, and repair of the cabin." They asserted that the land and cabin could not be evenly partitioned without great prejudice as a matter of law because the cabin is on Lot 1, and Lot 3 is undeveloped, making the properties unlike and unequal in value. The Clawsons moved for summary judgment.

¶ 4 In opposition to that motion, the Silvers proposed that the property be partitioned in kind. They would partition Lot 1 from Lot 3 and then compensate the party receiving Lot 3 by cash payment under the remedy of owelty as set forth in section 78–39–41 of the Utah Code. In support of their proposal, the Silvers submitted the affidavit of Robert Mathis, formerly the Wasatch County Planner, averring that he believed a building permit could be procured to build a cabin on Lot 3 subject to the filing of a subdivision plat and satisfying ordinary health and safety concerns regarding water, sewer, and access for the lots. Under their plan, the Silvers would obtain ownership of Lot 1 with the cabin. They asserted that such an arrangement would obviate any prejudice to the parties.

¶ 5 The trial court denied the Silvers' proposal to divide and equalize the property through principles of owelty, finding that it would be "inappropriate and inequitable in that the parties would not in fact receive like kind properties" and that a partition could not be made without "great prejudice" to the owners. The court ordered Lots 1 and 3 be sold at a public sale.

¶ 6 The Silvers appeal, contending that the trial court erred in granting summary judgment for the Clawsons, and that partition of the property could be made "without great prejudice" to the owners within the meaning of section 78–39–1 if the remedy of owelty was utilized. The sale of the property has been stayed pending the outcome of this appeal. Both parties claim strong sentimental attachment to the family cabin. Both

parties assert an intention to bid on the cabin if we affirm the trial court's order of sale.[2]

## ANALYSIS

¶ 7 When the family cabin was first built, a bronze plaque was embedded in the chimney of the master bedroom that read: "This house built in 1946 by Harold and Madelyn Silver for happiness with their children, Elizabeth, Barnard Stewart, Judith Ann, Brian Quayle." Leonard J. Arrington & John R. Alley, Jr., *Harold F. Silver: Western Inventor, Businessman, and Civic Leader* 141–42 (1992). Harold Silver spared no expense to build a home that would provide a gathering place for his family that would last for generations to come. *See id.* We have no doubt that this dispute was not what Harold and Madelyn Silver envisioned.

¶ 8 Regardless, the law provides for situations such as this where real estate owned by multiple heirs as tenants in common must in some way be partitioned. *See Barrett v. Vickers*, 12 Utah 2d 73, 75, 362 P.2d 586 (1961) ("It is obvious that where a cotenancy is undesirable to one or more of the parties and they cannot agree upon a solution to the problems it presents, there must be some method of terminating it."). We first look to the governing statutes on partition. Section 78–39–1 entitled "Partition by cotenants of real property," provides:

> When several cotenants hold and are in possession of real property as joint tenants or tenants in common, in which one or more of them have an estate of inheritance, or for life or lives, or for years, an action may be brought by one or more of such persons for a partition thereof according to the respective rights of the persons interested therein, and for a sale of such property or a part thereof, if it appears that a partition cannot be made without *great prejudice* to the owners.

(Emphasis added.) This statute presumes that when a cotenancy must be terminated, partition in kind is the proper remedy unless such partition cannot be made without *great*

2. The Silvers assert that a partition sale would result in a bidding war between brother and sister for the family cabin, which they state they could not win. The Silvers contend that such a result would allow affluent property owners to buy out cotenants with fewer resources, and by doing so, strip the Silvers of their right to the family property.

*prejudice.* Partition in kind may still be appropriate even when such a division cannot be made without some *prejudice* if one party is compensated by the other for any inequality. Section 78–39–41 of the Utah Code, entitled "Owelty," provides:

When it appears that a partition cannot be made equally among the parties according to their respective rights *without prejudice* to the rights and interests of some of them, and a partition is ordered, the courts may adjudge compensation to be made by one party to another on account of the inequality .... And in all cases the court has power to make compensatory adjustment among the parties according to the principles of equity.

¶ 9 In our only decision where owelty was employed pursuant to section 78–39–41, we approved its use to equalize the partition of unimproved real estate instead of ordering a public sale. *See Roper v. Bartholomew,* 30 Utah 2d 386, 518 P.2d 683 (1974). In *Roper,* we upheld a partition in kind with a $200 per acre payment of owelty to equalize one party receiving less valuable land than the other. In other cases, where partitioning in kind was not feasible, a sale was approved. *See Gillmor v. Gillmor,* 657 P.2d 736, 742 (Utah 1982) (holding that a partition in kind of "substantial buildings and improvement of such diverse nature and lands of such diversity of development and production ... would be inequitable [because together they formed a single farming unit]"). Similarly, in *Edgar v. Wagner,* 572 P.2d 405 (Utah 1977), partition in kind of a house and lot among three cotenants was held to be not feasible without incurring great prejudice.

¶ 10 In the instant case, the court declined to order a partition in kind with the payment of owelty because the parties would not each receive like kind property. In other words, one party would receive the cabin with its out buildings and the other party would receive unimproved Lot 3, together with owelty. We find nothing in our statutes or in our case law that requires that both parties receive like kind property. Indeed, if the only property to be divided here were the cabin which sits on a single lot, partition in kind would be difficult, if not impossible. However, be-

cause the property here to be partitioned includes not only the cabin but also an unimproved lot upon which a cabin might possibly be built, a partition in kind with the payment of owelty should be explored. In *Ryan v. Egan,* 26 Utah 241, 245, 72 P. 933, 935 (1903), we observed:

Whether or not a partition can be made without great prejudice to the owners is a question of fact, the decision of which is not aided by judicial notice of any fact or circumstance not proved; and, where a sale is sought, the burden is upon the party urging it to show the facts upon which an order of sale may be made—the presumption being that an actual partition may be had.

(Citation omitted.)

¶ 11 Courts in other jurisdictions have indicated a preference for division in kind with the payment of owelty instead of a sale. *See Rothert v. Rothert,* 109 Ill.App.3d 911, 916, 65 Ill.Dec. 387, 441 N.E.2d 179, 182 (1982) (holding that an unequal division with owelty is preferred over a sale); *Chesmore v. Chesmore,* 484 P.2d 516 (Okla.1971) (stating that sale of lands in partition is justified only when partition in kind, with or without owelty, is impractical); *see also Barth v. Barth,* 901 P.2d 232 (Okla.App.1995) (approving *Chesmore*). In *Schnell v. Schnell,* 346 N.W.2d 713 (N.D.1984), the court, in reversing a trial court's order that ranch property be sold rather than partitioned in kind, held that under a North Dakota statute almost identical to our section 78–39–1, unless great prejudice is shown, a presumption prevails that partition in kind should be made, that forced sales are strongly disfavored, and that owelty may be employed to make the partition in kind equitable.

¶ 12 In the instant case, the trial court, believing that a partition could not be made without great prejudice to one or more of the parties because both could not receive like kind property, did not fully explore the feasibility of making a partition in kind with the payment of owelty. However, as earlier stated, there is no requirement in our statutes or case law that each party receive like kind property. While only one cabin is at issue, an unimproved lot upon which a cabin might

be constructed is also available for partitioning. Since both parties have a strong sentimental attachment to the property, and both desire to retain an interest in it, a public sale should be a last resort. The trial court with the help of the parties and any referee or referees that may be appointed pursuant to sections 78–39–13 and 78–39–46 should explore further the possibility of a cabin being built on Lot 3. If that can be done, then it would appear that a partition giving one party the cabin and the other party Lot 3 with the payment of owelty might be practicable. If Lot 3 is too small for a cabin, the possibility of purchasing adjoining property to enlarge the lot should be determined. The trial court, invested with broad equitable powers, together with the assistance of the parties and referees, should explore all reasonable alternatives to the public sale of the property and should not be limited to the two proposals advanced by the parties. The ownership of real property has always been highly valued by courts of equity as evidenced by its power to grant specific performance in appropriate cases. No less here should parties be divested of their ownership of lands to which they have strong attachment unless there is no other reasonable alternative.

¶ 13 The summary judgment is reversed, and the case is remanded to the trial court for further proceedings in accordance with this opinion.

¶ 14 Associate Chief Justice RUSSON, Justice DURRANT, Judge BILLINGS, and Judge JACKSON concur in Chief Justice HOWE's opinion.

¶ 15 Having disqualified themselves, Justice DURHAM and Justice WILKINS do not participate herein; Utah Court of Appeals Judges JUDITH BILLINGS and NORMAN JACKSON sat.