Docket Nos. 89551, 89560 cons.–Agenda 18–March 2001.

JOHN STEINBRECHER 
et al
., Appellants, v. ROSEMARY STEINBRECHER, Appellee.

Opinion filed September 27, 2001.

JUSTICE FITZGERALD delivered the opinion of the court:

In November 1995, John Steinbrecher (John) filed suit under the Illinois partition act (735 ILCS 5/17–101 
et seq
. (West 1994)) against his two siblings, Jerome and Rosemary (Rosemary) Steinbrecher, to partition or sell three parcels of land located in Kendall County. At the close of the partition trial, the circuit court held that each sibling held an undivided one-third interest as tenants in common, but that the property could not be divided “without manifest prejudice.” The circuit court ordered public sale of the entire property. Thereafter, the circuit court approved the offer of the highest bidder, Moser Enterprises, Inc. (Moser); confirmed the sale to Moser in open court; and directed that the deed be recorded in Moser’s name. Rosemary never perfected a motion to stay judgment and filed her notice of appeal 49 days after the circuit court order. The appellate court determined that Rosemary’s procedural errors did not bar her appeal. The appellate court vacated the sale of property to Moser and remanded to the circuit court for further proceedings. 312 Ill. App. 3d 289. We now reverse the judgment of the appellate court.

BACKGROUND

On January 21, 1991, Francis Steinbrecher died intestate, survived by his three children, John, Jerome, and Rosemary. As heirs and beneficiaries of the estate of Francis Steinbrecher, John, Jerome, and Rosemary held title as tenants in common to three separate land parcels situated in Kendall County, totaling 409 acres. In November 1995, John filed suit under the Illinois partition act against Jerome and Rosemary in order to partition, or sell in the event partitioning was infeasible, the property.

In August 1996, pursuant to the partition act the trial court appointed a real estate consultant as commissioner to “evaluate the feasibility of partitioning” the property.
(footnote: 1) This commissioner surveyed the property and prepared a written “Appraisal/Commissioner Report” for the court.

At the partition trial in August 1997, consistent with his report, the commissioner testified that the property was incapable of equitable partition-in-kind between the three heirs. He stated that the property consisted of three noncontiguous parcels with widely varied characteristics. For example, the property contained farmland and wooded acreage on a flood plane. Moreover, the location and man-made obstacles such as a railroad track, a county road, and a running creek, further prevented an equal three-way division of the property. Neither Jerome nor Rosemary presented evidence to the trial court to refute the commissioner’s testimony.

After reviewing the evidence, the trial court ruled that John, Jerome, and Rosemary each held an undivided one-third interest as tenants in common, that the property could not be divided without manifest prejudice, and that the property should be sold at a public sale.

In 1998, the exclusive listing agent approved by the court listed the property for a price of $4.5 million. In August 1998, after the trial court was notified by the agent of three offers to purchase, the trial court approved the $3.5 million offer of the highest bidder, Moser. In open court on September 24, 1998, the trial court confirmed the sale, directed a quitclaim deed be recorded in Moser’s name, and entered a Rule 304(a) finding (155 Ill. 2d R. 304(a)) regarding the sale to Moser. Pursuant to the sale, monies were disbursed, including the IRS liens, marketing and advertising fees, the mortgage, closing costs, and attorney fees.

On September 25, 1998, Rosemary filed a 
pro se
 “Motion for Stay of Judgment Pending Appeal and Rehearing Re: Deposition” which she noticed for hearing on October 2, 1998. On October 2, the trial court continued the motion for hearing to October 30, 1998. The trial court then addressed Rosemary:

“THE COURT: *** I told you a long time ago that I’m not going to hear this thing every other day. Just because you want to file a motion doesn’t mean I’m going to hear it. I told you to file things once a month. We’ve set a date for a motion sometime later in this month.

* * *

Now, yet, you continually file motions. You continually get the–the Clerk’s office has to bring this file down here. The other attorney has to come in. He was here all morning. And I’ve told you in the past I’m not going to hear this just because you want to file a motion and notice it up on whatever day you want to notice it up. Now, I will hear the–everything you have, whatever it is, on the next court date

* * *

Now if you do this again, I’m going to start imposing sanctions against you. We’re not going to be disrupting everybody’s life simply because you want to file a motion, especially when I’ve given you a date in the future.

ROSEMARY: Your Honor, the date in the future had nothing to do with this particular issue.

THE COURT: What difference does that make? It’s [
sic
] court date where everybody is supposed to be here, correct? Do you think I’m going to sit here and have everybody come in here every day just because you want to file a motion and you want to be heard on this day because you happen to be available?

ROSEMARY: I thought time might be of the essence, in fairness to the parties.

THE COURT: I doubt, in this case, time is of the essence to anybody. As I said, do it again and I’m going to start imposing sanctions against you. Okay?”

On October 30, 35 days after the court’s final judgment, Rosemary appeared for hearing on her stay of judgment motion. Additionally, Rosemary filed and presented for hearing a new motion, entitled “Motion to Declare Void the Sale of Property to Moser Enterprises, Inc.” The trial court denied Rosemary’s motion to void the sale and denied Rosemary’s motion to stay the judgment. Rosemary never filed a motion with the appellate court to stay the judgment.

Despite the September 24, 1998, order granting right, title, and interest to Moser, Rosemary refused to vacate the Kendall County property. As a result, on October 30, 1998, Moser sought leave to intervene for the limited purpose of “enforc[ing] its right to possession.” This was Moser’s first appearance in the litigation. The trial court granted Moser’s petition for leave to intervene, granted Moser’s motion for possession, and ordered Rosemary to vacate the property on or before November 13, 1998.

On November 13, 49 days after Moser was granted exclusive possession of the property, Rosemary filed a notice of appeal. John moved to dismiss the appeal, arguing that the appellate court lacked jurisdiction because the notice of appeal was untimely and because the appeal was moot pursuant to the protections afforded third-party purchasers under Illinois Supreme Court Rule 305(j) (155 Ill. 2d R. 305(j)).

 The appellate court held that procedural errors did not bar Rosemary’s appeal because the threat of sanctions voiced by the trial judge to Rosemary, a 
pro se
 litigant,
(footnote: 2) “were confusing and likely had the effect of keeping her from filing her motion” within the proper time period. 312 Ill. App. 3d 289, 297. By the term “her motion” the appellate court referred to Rosemary’s October 30, 1998, “Motion to Declare Void the Sale,” which it labeled a post-judgment motion. 312 Ill. App. 3d at 297. According to the appellate court, the October 30 post-judgment motion served to toll the period for appeal such that the notice of appeal filed on November 13, 1998, was timely. 312 Ill. App. 3d at 297. Additionally, the appellate court held that the issue was not moot because Moser’s post-sale, post-judgment intervention on October 30, 1998, barred the application of Rule 305(j) and any protection it afforded nonparty purchasers. 312 Ill. App. 3d at 297-98. The appellate court then vacated the sale of the property and remanded for further proceedings to determine, again, whether the property could be partitioned without manifest prejudice. 312 Ill. App. 3d at 305.

Following entry of the appellate court judgment, Moser moved to intervene in order to file a petition for rehearing. On April 19, 2000, the appellate court granted Moser leave to intervene but denied its petition for rehearing. On May 24, 2000, Moser timely filed its petition for leave to appeal to this court. On July 5, 2000, John timely filed his petition for leave to appeal to this court. We granted the petitions and consolidated the appeals.

ANALYSIS

As an initial matter, John and Moser contend that the appellate court committed reversible error because it lacked jurisdiction due to Rosemary’s failure to file a timely notice of appeal. Rosemary filed her notice of appeal on November 13, 1998, 49 days after the trial court entered its final judgment. They contend that the notice of appeal was untimely under Rule 303(a), and that her “Motion to Declare Void the Sale” filed on October 30, 1998, did not toll the time to file her notice of appeal because it was also untimely under section 2–1203(a) of the Code of Civil Procedure (155 Ill. 2d R. 303(a); 735 ILCS 5/2–1203(a) (West 1998)). Moreover, they contend that even if the motion to void was timely, it did not toll the time to appeal because the motion was an insufficient post-judgment motion under section 2–1203(a). 
Anderson v. Resource Economics Corp.
, 133 Ill. 2d 342 (1990) (a post-judgment motion must include a request for at least one form of relief specified in section 2–1203 and allege grounds that warrant the relief); accord 
Beck v. Stepp
, 144 Ill. 2d 232 (1991); but see 
Berg v. Allied Security, Inc.
, 297 Ill. App. 3d 891 (1998) (holding that section 2–1203 does not require specificity despite judicial 
dictum
 stating to the contrary), 
vacated & appeal dismissed
, 193 Ill. 2d 186 (2000).

It is a well-established proposition that jurisdiction only arises in the appellate court when a party timely files a notice of appeal. 
Berg
, 193 Ill. 2d at 189; 
Archer Daniels Midland Co. v. Barth
, 103 Ill. 2d 536, 538 (1984); 155 Ill. 2d R. 301. Under Rule 303(a), entitled “Appeals from Final Judgments of the Circuit Court in Civil Cases,” a notice of appeal must be filed within 30 days after entry of a final judgment or within 30 days after the entry of an order disposing of the last pending post-judgment motion. 155 Ill. 2d R. 303(a). Section 2–1203(a) of the Code of Civil Procedure addresses the timing of the post-judgment motions referred to in Rule 303(a). According to section 2–1203(a), “[i]n all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.” 735 ILCS 5/2–1203(a) (West 1998).

Whether Rosemary’s notice of appeal was timely filed is dependent on whether her October 30, 1998, “Motion to Declare Void the Sale to Moser Enterprises, Inc.” was a sufficient post-judgment motion under section 2–1203(a) of the Code of Civil Procedure, and whether Rosemary timely filed that motion. Only a sufficient post-judgment motion, timely filed, will toll the 30-day period for filing a notice of appeal.

In addressing these matters, the appellate court held that Rosemary’s October 30 motion was essentially a motion to reconsider, which is a proper post-judgment motion under section 2–1203. As to the timeliness of the October 30 motion, the appellate court held that under the circumstances of this case, the motion was timely and it thus served to toll the 30-day appeal period. The appellate court explained that, although 
pro se
 litigants are presumed to know the procedural rules, “when, as here, a trial court threatens sanctions for the filing of motions, such a litigant must be given considerable leeway in meeting procedural requirements.” 312 Ill. App. 3d at 297.

We need not decide whether Rosemary’s October 30 motion was a proper motion under section 2–1203 or whether the trial judge’s egregious comments excuse Rosemary’s failure to file her motion within 30 days of the court’s September 24, 1998, final order. Rather, we agree with John and Moser that Rosemary’s appeal is moot, pursuant to Supreme Court Rule 305(j), and that jurisdiction is therefore lacking. 155 Ill. 2d R. 305(j).

An appeal is moot when it involves no actual controversy or the reviewing court cannot grant the complaining party effectual relief. 
Barnard v. Michael
, 392 Ill. 130, 133-34 (1945). Courts of review will generally not consider moot or abstract questions because our jurisdiction is restricted to cases which present an actual controversy. 
People ex rel. Sklodowski v. State
, 162 Ill. 2d 117, 130-31 (1994); 
People ex rel. Partee v. Murphy
, 133 Ill. 2d 402 (1990); 
Barnard
, 392 Ill. at 133-34. If this court extends Moser Rule 305(j) protection, the issue is moot and any judgment or reversal by a reviewing court is without effect. 

Pursuant to Rule 305(j), John and Moser argue that when the trial court granted right, title, and interest to a nonparty on September 24, 1998, and Rosemary failed to perfect a stay of that judgment, any order invalidating that judgment and sale is without effect. Whether Rule 305(j) renders this matter moot involves the application of law to undisputed facts. Therefore, our review is 
de novo
. 
People v. Buss
, 187 Ill. 2d 144, 204-05 (1999).

Rule 305(j) protects third-party purchasers of property from appellate reversals or modifications of judgments regarding the property, absent a stay of judgment pending the appeal. Rule 305(j) provides:

“If a stay is not perfected within the time for filing the notice of appeal, or within any extension of time granted under subparagraph (c) of this rule, the reversal or modification of the judgment does not affect the right, title, or interest of any person who is not a party to the action in or to any real or personal property that is acquired after the judgment becomes final and before the judgment is stayed; nor shall the reversal or modification affect any right of any person who is not a party to the action under or by virtue of any certificate of sale issued pursuant to a sale based on the judgment and before the judgment is stayed.” 155 Ill. 2d R. 305(j).

Thus, Rule 305(j) requires (1) the property passed pursuant to a final judgment; (2) the right, title and interest of the property passed to a person or entity who is not part of the proceeding; and (3) the litigating party failed to perfect stay of judgment within the time allowed for filing a notice of appeal. 155 Ill. 2d R. 305(j).
(footnote: 3)
 We now apply those requirements to the instant case. First, on September 24, 1998, the right, title and interest to the Kendall County property passed pursuant to a final judgment. A final judgment disposes of the rights of the parties. 
In re Estate of French
, 166 Ill. 2d 95, 101 (1995). Particularly, the final judgment “decides the controversies between the parties on the merits and fixes their rights, so that, if the judgment is affirmed, nothing remains for the trial court to do but to proceed with its execution.” 
In re J.N.
, 91 Ill. 2d 122, 127 (1982); see also Black’s Law Dictionary 847 (7
th ed. 1999) (a final judgment is a “court’s last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs *** and enforcement of the judgment”). Where multiple parties are involved in the litigation, a court may enter a final judgment pursuant to Rule 304(a) (155 Ill. 2d R. 304(a)). A Rule 304(a) finding renders a judgment final, enforceable, and appealable.

In this case, all issues in controversy concerned the disposition of the Kendall County property. The trial court confirmed the sale of that property, directed a quitclaim deed be recorded, and entered a Rule 304(a) finding regarding the sale on September 24, 1998. Under Rule 304(a), this was a “final judgment” and therefore satisfies the first element of Rule 305(j).

Second, the property passed to a nonparty to the litigation, Moser. A party is defined as “[o]ne by or against whom a lawsuit is brought.” Black’s Law Dictionary 1144 (7th ed. 1999). This includes a person who has a stake or standing in the lawsuit and one who is entitled to enforce rights from the final outcome of the litigation. 
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 492-93 (1988).

Under Rule 305(j) a person or entity is deemed a nonparty 
at the time
 of the judgment and sale. Its language compels this conclusion. Specifically, in regard to minors or persons with disabilities, the text provides that “[t]his paragraph applies even if the appellant is a minor or a person under legal disability or under duress at the time the judgment becomes final.” 155 Ill. 2d R. 305(j). Thus, the rule clearly evaluates and assigns status at the time of the judgment and sale.

John initiated his partition claim in November 1995. On September 24, 1998, the trial court approved the offer, ordered the quitclaim deed entered in Moser’s name, and entered a 304(a) finding. When Moser acquired title pursuant to the judgment and sale, and at all times prior, neither was it “[o]ne by or against whom a lawsuit is brought” nor did it have a stake or standing in the partition lawsuit. Moser was a mere purchaser of the property. At the time of the judgment and sale, therefore, Moser was a nonparty for purposes of Rule 305(j).

Consistent with the appellate court’s opinion, Rosemary contends that when Moser intervened in the circuit court on October 30, 1998, to secure its right to possession it became a “party” to the litigation and lost the protections afforded to nonparty purchasers under Rule 305(j). We reject this argument and hold that post-sale, post-judgment intervention does not bar the application of Rule 305(j). As discussed, status attaches at the time of the sale and judgment. Stripping the protection of Rule 305(j) because of subsequent efforts by a party to secure exclusive possession of the property would render an absurd result. 
State Farm Fire & Casualty Co. v. Yapejian
, 152 Ill. 2d 533, 541 (1992) (whenever possible, this court shall avoid interpretations that render absurd or unjust results). Such a holding would deny recourse to parties who in good faith purchase property pursuant to a judicial sale, but are unable to secure right to possession and use of that property. This outcome would force parties to choose court intervention, and lose the protection of Rule 305(j), or engage in self-help to secure possession.

Finally, as required under Rule 305(j), Rosemary failed to perfect a stay of judgment in order to bar its application. A stay of judgment is collateral to the judgment and does not affect or alter the issues on appeal. See 
In re Estate of Goodlett
, 225 Ill. App. 3d 581, 587 (1992). The Illinois Supreme Court rules provide clear direction regarding stay of judgments and the recourse available in the event a trial court denies a stay of judgment. Rule 305(d) authorizes litigants to make a motion in the reviewing court for a stay of judgment following denial of the same motion by the trial court. 155 Ill. 2d R. 305(d). As noted by our appellate court, even if the motion before the trial court was denied in error, the recourse remains unchanged, and the party must renew the motion in the appellate court. 
In re Estate of Bork
, 145 Ill. App. 3d 920, 930 (1986); 
Horvath v. Loesch
, 87 Ill. App. 3d 615, 620 (1980). Rule 305 requires that a litigant must “show that application to the trial court is not practical, or that the trial court has denied an application or has failed to afford the relief that the applicant requested.” 155 Ill. 2d R. 305(d). Moreover, under Rule 305(j), a stay must be “perfected within the time for filing notice of appeal.” 155 Ill. 2d R. 305(j).

On October 2, 1998, Rosemary filed a “Motion for Stay of Judgment Pending Appeal and Rehearing Re: Deposition.” This motion was denied by the trial court on October 30, 1998. Contrary to the requirement in Rule 305(j), Rosemary never renewed her motion to stay in the reviewing court.
(footnote: 4) Therefore, under Rule 305(j), Moser’s rights in the Kendall County property are protected and the relief Rosemary sought–a judgment voiding the sale to Moser–cannot be granted. Rather, her appeal is moot.

Rosemary’s 
pro se
 status does not alter this result.
 Pro se
 litigants are presumed to have full knowledge of applicable court rules and procedures, including procedural deadlines with respect to filing motions. See 
Domenella v. Domenella
, 159 Ill. App. 3d 862, 868 (1987) (construing Rule 303(a), holding that 
pro se
 defendants must comply with the same rules of procedure as would be required of litigants represented by an attorney). Moreover, despite Rosemary’s 
pro se
 status, the record does not indicate that she was ignorant of court rules and procedures. In fact, the record shows that Rosemary litigated this matter, including the filing of motions, responses, and court appearances, for several years prior to the trial court’s final judgment. Rule 305(d) clearly explained her recourse following the dismissal of her motion to stay in the trial court. This court cannot excuse her failure to follow procedure in order to bar the application of Rule 305(j).

Public policy of this state supports our conclusion. Illinois law protects the integrity and finality of property sales, including judicial sales. 
Dixon v. City National Bank
, 81 Ill. 2d 429, 433 (1980);
 Checkley & Co. v. Citizens National Bank
, 43 Ill. 2d 347, 350 (1969);
 Blancett v. Taylor
, 6 Ill. 2d 434, 438 (1955);
 Shultz v. Milburn
, 366 Ill. 400, 405 (1937); 
Levy v. Broadway-Carmen Building Corp.
, 366 Ill. 279, 282-83 (1937);
 Smith v. Herdlicka
, 323 Ill. 585, 592-93 (1926);
 Crist v. McCoy
, 287 Ill. 641, 647 (1919);
 Osmond v. Evans
, 269 Ill. 278, 284 (1915);
 Conover v. Musgrave
, 68 Ill. 58, 62 (1873). Indeed, it extends this protection to purchasers who without notice at the time of the purchase buy in good faith. This finality and permanence is relied on by both purchasers and others in connection with the purchase of the property, including financial institutions, title insurers, realtors, and tenants. Absent this policy, no person would purchase real property involved in a judicial proceeding, if afterwards he incurred the hazard of losing the property due to facts unknown to him at the time of the sale. A party may avoid the harshness of this rule by complying with the procedural mechanisms available, such as a motion to stay enforcement of the judgment and sale.

The dissent suggests that this court ignore the plain language of Rule 305(j) and strong public policy favoring the finality and permanence of judicial sales to address alleged procedural irregularities occurring during the sale. This opinion declines to address or outline those irregularities because they are secondary to Rule 305(j).

The dissent maintains that the trial court lacked authority to order the sale because it failed to comply with the Act, and that this rendered the judgment “void.” According to the dissent, failure to follow the Act is fatal to the circuit court’s jurisdiction. The Act, the dissent argues, gives the circuit court the “inherent authority”to adjudicate the controversy and, therefore, failure to follow procedure under the Act divests the court of jurisdiction and renders the order “void.” See slip op. at 26-28 (Freeman, J., dissenting), citing 
In re M.M.
, 156 Ill. 2d 53 (1993); 
People v. Wade
, 116 Ill. 2d 1 (1987);
 Peck v. Peck
, 16 Ill. 2d 268 (1959);
 Armstrong v. Obucino
, 300 Ill. 140 (1921);
 Woodward v. Ruel
, 355 Ill. 163 (1933);
 Maloney v. Dewey
, 127 Ill. 395 (1889). According to the dissent, if the judgment is “void” Rule 305(j) would not apply.

The dissent mistakenly relies upon a rule of law not applicable to the present circumstances. The “inherent authority” requirement existed before reform to the judicial system in 1964. Effective January 1, 1964, the General Assembly amended article VI and replaced limited jurisdiction: “Circuit Court[s] shall have unlimited original jurisdiction of all justiciable matters.” Ill. Const. 1870, art. VI, §9 (amended 1964); accord Ill. Const. 1970, art VI, § 9 (“Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction”). This amendment created a single integrated trial court vested with jurisdiction to adjudicate all controversies. 
Zamarron v. Pucinski
, 282 Ill. App. 3d 354, 360 (1996).
 
Thus, the “inherent power” requirement applies to courts of limited jurisdiction and administrative agencies. As we noted in 
City of Chicago v. Fair Employment Practices Comm’n
, 65 Ill. 2d 108, 112 (1976):

“We believe the jurisdictional rule applicable to the Commission is analogous to that governing the courts of 
limited jurisdiction and powers formerly existing in our pre-1964 judicial system
. In the context of cases involving the validity of orders or judgments of 
those courts
, this court has said: ‘A judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter or which lacks the inherent power to make or enter the particular order involved, is void ***.’ ” (Emphases added and omitted.)

An administrative agency, like the pre-1964 circuit courts, is powerless to act unless statutory authority exists. 
City of Chicago
, 65 Ill. 2d at 112. An administrative agency is a statutory creature with no general or common law power. 
City of Chicago
, 65 Ill. 2d at 112-12. Conversely, a circuit court is a court of general jurisdiction, which need not look to the statute for its jurisdictional authority.

Importantly, the dissent overlooks our recent discussion explaining
 the distinction between “void” and “voidable” judgments. In 
Mitchell
 we stated that “[t]he question whether a judgment is void or voidable depends on whether the court entering the challenged order possessed jurisdiction over the parties and the subject matter. [Citation.] If jurisdiction is lacking, any subsequent judgment of the court is rendered void ***. ” 
In re Marriage of Mitchell
, 181 Ill. 2d 169, 174 (1998), quoting 
People v. Davis
, 156 Ill. 2d 149, 155-56 (1993).

Significantly, the dissent does not dispute that the trial court in the present case had both subject matter jurisdiction and personal jurisdiction over the parties. For this reason, the judgment is not “void.” This is true even if we were to assume that the trial court failed to strictly follow the provisions of the Act.

In
 Mitchell
, a wife argued that the settlement agreement was “void” because the trial judge specified child support payments as a percentage rather than a dollar amount, and so failed to comply with procedures set forth in the Illinois Marriage and Dissolution of Marriage Act.
 In re Marriage of Mitchell
, 181 Ill. 2d at 171-73. We agreed that the trial judge failed to follow the precise terms of the Act. However, we reversed the order of the appellate court finding the judgment “void”:

“In exercising this jurisdiction, however, the trial court judge entered a judgment that was contrary to the statute. *** The error in judgment, however, is not enough to divest the court of jurisdiction to enter the order. The judge had jurisdiction of the parties and subject matter, and, although the judgment was erroneous, the judge had authority to enter the child support order.” 
In re Marriage of Mitchell
, 181 Ill. 2d at 175. 

Clearly, under this holding
, even if the trial court failed to follow the precise terms of the Act or entered a judgment in error, the resulting judgment is not “void.”

Quoting a more recent decision, 
People v. Davis
, the dissent asserts that failure to comply with a statute is tantamount to a jurisdictional defect and renders the judgment “void.” Slip op. at 26 (Freeman, J., dissenting), quoting 
Davis
, 156 Ill. 2d at 156 (“the power [conferred by the statute] to render the particular judgment or sentence is as important an element of jurisdiction as its personal jurisdiction and subject matter jurisdiction”). Initially, we observe that 
Davis
 discusses jurisdiction “in the context of criminal proceedings.” 
Davis
, 156 Ill. 2d at 156. Criminal proceedings that involve the power to render judgments or sentences address a separate set of concerns not at issue in the present matter. Nevertheless, 
Davis
 does not hold that failure to comply with a statute robs a court of jurisdiction. Instead, we held that, “[w]hether a judgment is void or voidable presents a question of jurisdiction.” 
Davis
, 156 Ill. 2d at 155. Yet, jurisdiction is not affected by an incorrect judgment: “jurisdiction or power to render a particular judgment does not mean that the judgment rendered must be the one that should have been rendered, for the power to decide carries with it the power to decide wrong as well as to decide right.” 
Davis
, 156 Ill. 2d at 156. For this reason, this court held that although the erroneous judgment was “voidable,” the error in sentencing under the statute did not divest jurisdiction. 
Davis
, 156 Ill. 2d at 157-58.

Plainly, the judgment of the circuit court is not “void” and the provisions of Rule 305(j) apply. On September 24, 1998, when the trial court confirmed the sale of property to Moser and directed a quitclaim deed be recorded in its name, Moser was a nonparty to the action between John, Jerome, and Rosemary. Moreover, the property passed pursuant to a final judgment in a circuit court with jurisdiction. Rosemary failed to perfect a stay of that judgment. Thus, according to Rule 305(j) there was no longer any justiciable issue for which an appellate court could grant relief. As noted earlier, the power of appellate review is confined to the “consideration of actual controversies, cases in which the judgment can be given effect.” 
Barnard v. Michael
, 392 Ill. 130, 133-34 (1945).

For the foregoing reasons, we find it unnecessary to address the remaining contentions on the merits. The judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

Appellate court judgment reversed;

circuit court judgment affirmed.

JUSTICE FREEMAN, dissenting:

Today, the majority extends the protection of our Rule 305(j) (155 Ill. 2d R. 305(j)) to a sale ordered by the circuit court in a partition action brought by plaintiff, John Steinbrecher, against defendants, Rosemary C. Steinbrecher and Jerome Steinbrecher. The majority does so without addressing completely the concerns raised by Rosemary regarding the authority of the circuit court to order the sale. The majority does so without due concern that defendants have been deprived of their property under circumstances which, at best, evince a forced sale of the property, and, at worst, suggest that the sale was fraudulent. Indeed, the majority asserts that a fraudulent sale merits the protection of our Rule 305(j). Further, in its haste to extend Rule 305(j) protection to this sale, the majority overrules long settled precedent regarding the elements of jurisdiction, and the equally settled precedent that this court will not countenance fraud. Because I believe that this court has a responsibility to examine matters of jurisdiction, and an affirmative duty to refrain from condoning fraud, I respectfully dissent.

FACTUAL BACKGROUND

The facts as stated in the majority opinion require elaboration. In the complaint for partition filed on November 28, 1995, plaintiff represented that he and defendants, the heirs and beneficiaries of the estate of Francis J. Steinbrecher, held title to the property as tenants in common. Plaintiff named as additional defendants Hinsdale Nurseries, Inc., C.D.’s Trees Service, and David Mukelson, tenants in possession of certain portions of the property, and Farm Credit Services of Northern Illinois, the holder of a mortgage on a portion of the property. Plaintiff did not name the estate as a defendant even though the estate only released its interest in the property on January 31, 1997.

On April 26, 1996, plaintiff requested that the circuit court appoint a commissioner to assess the feasibility of a partition. On May 5, 1996, the court appointed Chicago Title & Trust Company, as a single commissioner, to partition the property. Chicago Title declined the appointment and, eventually, Michael R. Crowley was appointed as a substitute commissioner. Prior to the appointment of Crowley as substitute commissioner, the court did not ascertain and declare the rights, titles and interest of all the parties in the action, nor did it enter judgment of partition according to the rights of the parties. Further, Crowley did not take and subscribe an oath that he would fairly and impartially partition the property according to the rights and interests of the parties as declared by judgment of the court.

On March 11, 1997, Crowley submitted an “Appraisal/Commissioner’s Report” to the court. In the report, Crowley valued the property, consisting of three parcels of land with a total of 409 acres, at $4,500,000. Crowley noted that, if the three parcels were sold individually, the value of the property would be $4,859,000. The values ascribed were as of August 30, 1996.

For purposes of partition, Crowley divided the three parcels into five segments. Crowley then stated:

“One of the purposes of this analysis is to recommend to the client an equitable distribution of the various segments and parcels of the subject property among three parties. The appraiser considered various permutations of the five various segments, with individual values of $1,595,000; $1,608,000; $1,008,000; $426,000; and $222,000.

None of the combinations of these five segments resulted in three relatively equal units. The closest combination to this target was: the South Segment of Parcel #1 at $1,595,000, the North Segment of Parcel #1 at $1,608,000, leaving all of Parcel #2 at $1,434,000, and all of Parcel #3 at $222,000, for a total of $1,656,000 as the third unit.

While the first and second combinations resulted in relatively similar values, the third combination was substantially greater. And therefore, the appraiser, acting as the court appointed commissioner, was unable to recommend an equitable distribution of these assets among three parties 
unless other compensation was provided to the first two combinations and/or some concession was applied to the third.”

At a bench trial in August 1997, Crowley testified that the three parcels were not contiguous. Parcel 1 was located approximately one mile from parcels 2 and 3. If the three parcels were sold as a unit, the property would be on the market for a longer period of time. Additionally, a buyer would likely discount the price paid for the property as a whole. Again, Crowley noted that the appraised value of the property as a whole was $359,000 less than the appraised value of the three parcels.

Crowley testified that in attempting to partition the land, he divided parcels 1 and 2 into four segments. He believed that each parcel should be so divided because the parcels were bisected by a road. Adding parcel 3 to parcels 1 and 2, he obtained five segments that he attempted to partition equally. In his opinion, an equitable distribution or partition of the property in kind was not feasible unless some concession was made for the financial inequality between the three parcels as proposed for partition. Crowley did not consider further subdividing the 409 acres to arrive at a more equal partition of the property.

In a letter to all parties dated October 1, 1997, the court stated that the property could not be divided amongst the three heirs. The court ordered a public sale of the property, with the terms and notice of sale to be decided at a later date. Subsequently, in an order dated October 28, 1997, the court found that the three heirs were the owners of the property, each holding interests of an undivided one-third, as tenants in common. Further, the court found that the property could not be divided without manifest prejudice to the owners. The court ordered that the entire property be sold at public sale on terms agreed to between the parties or further ordered by the court. The court denied Rosemary’s motion for a stay of judgment pending appeal, and set the appeal bond at $3 million.

Upon motion of plaintiff, the court approved a contract for the real estate firm of Dolan and Murphy to sell the property. According to the contract, Dolan and Murphy had the exclusive right to sell the property for the period beginning January 9, 1998, and ending April 7, 1998. The contract was not renewed in April 1998. However, the court allowed Dolan and Murphy to continue marketing the property. On July 16, 1998, Dolan and Murphy forwarded to the clerk of the circuit court a contract submitted by Inland Real Estate Development Corporation for the purchase of the property. The purchase price proposed by Inland was $3.5 million. On July 28, 1998, Dolan and Murphy forwarded to the clerk of the circuit court a contract submitted by Robert Hamman to purchase the property for $3,050,000.

At a hearing on July 30, 1998, plaintiff requested that the court approve one of the contracts submitted by Dolan and Murphy. Jerome objected to approval of the contracts, and the court continued the hearing to August 19, 1998. The night before the continued hearing, Dolan and Murphy mailed to the clerk of the circuit court a contract submitted by Moser Enterprises Inc., for the purchase of the property. The contract listed a purchase price of $3,550,000, $50,000 more than the purchase price proposed by Inland. At the hearing on August 19, 1998, plaintiff tendered copies of the Moser contract to the judge, and defendants. Over defendants’ objections, the court approved the Moser contract. Subsequently, the court denied Rosemary’s motion for rehearing.

On September 4, 1998, Inland filed a petition for leave to intervene and a motion to reconsider the order of August 19, 1998. Initially, Inland noted that its contract to purchase the property was a matter of record in the proceeding and was file stamped by the clerk of the court on July 20, 1998. Moser’s contract to purchase the property was file stamped on August 19, 1998. Inland also noted that Dolan and Murphy did not advise Inland that Moser had submitted a contract to purchase the property. To the contrary, Dolan and Murphy advised Inland that the Inland contract would be approved by the court at the hearing on August 19, 1998. Relying on this representation, Inland did not attend the hearing.

Inland suggested that the court allow the parties to submit additional sealed offers to purchase the property. Inland represented to the court that it would make another offer, on terms comparable to Moser’s offer, with a higher purchase price. Inland believed that fundamental fairness to the buyers and to the heirs supported reopening the bids. At a hearing on September 24, 1998, plaintiff’s counsel admitted telling Inland that Inland’s offer to purchase the property was the highest offer received. He also told Inland that if the court were to approve one of the offers it would be the one Inland submitted. He testified, however, that Dolan and Murphy received Moser’s offer to purchase the property the night before the hearing. The circuit court denied Inland’s petition for leave to intervene and confirmed the sale to Moser.

ANALYSIS

A. Court’s Statutory Authority

In the circuit court proceedings, as on appeal, Rosemary maintained that the circuit court’s judgment, and the sale pursuant thereto, were void because the circuit court failed to comply with the Partition Act in several aspects. Since the circuit court derived its authority to sell the property from the Act, Rosemary argued that the court’s failure to follow the dictates of the Act was jurisdictional.

The majority does not detail the aspects in which the circuit court failed to comply with the Act nor does it consider whether the circuit court exceeded its authority by failing to comply with any particular provision of the Act. I will outline the four allegations I find most troubling.

First, Rosemary alleged that the circuit court appointed a commissioner to partition the property without first ascertaining the rights, titles and interest of all the parties to the action. Section 17–105 of the Act provides:

“Judgment. The court shall ascertain and declare the rights, titles and interest of all the parties in such action, the plaintiffs as well as the defendants, and shall enter judgment according to the rights of the parties.” 735 ILCS 5/17–105 (West 1996).

Section 17–108 of the Act provides:

“Duty of Commissioners. The commissioners shall enter upon the premises and, if the same are susceptible of division without manifest prejudice to the rights of the parties, they shall make partition thereof, allotting the several shares to the respective parties, quality and quantity relatively considered, according to their respective rights and interests as adjudged by the court ***. If the premises are not susceptible of division without manifest prejudice to the parties in interest, the commissioners shall value each piece or parcel separately.” 735 ILCS 5/17–108 (West 1998).

Thus, the circuit court must declare the rights of the parties and enter a judgment of partition according to those rights before it appoints commissioners to partition the premises. Indeed, the commissioners are not able to partition the premises without direction from the court regarding the rights and interest of the parties. Without such direction, the commissioners simply do not know the identities of the owners and what portion of the land each owner is entitled to.

The circuit court appointed Crowley substitute commissioner on August 30, 1996. Crowley submitted his report to the court on March 11, 1997. Subsequently, in its order of October 28, 1997, the court found that the three heirs were the owners of the property, holding interest of an undivided one-third each, as tenants in common. It thus appears that the court did not comply with the requirements of the Act.

Second, Rosemary alleged the circuit court failed to require that Crowley take an oath, as commissioner, to fairly and impartially partition the property. Section 17–107 of the Act provides:

“Oath of Commissioners. Each commissioner shall take and subscribe an oath or affirmation fairly and impartially to make partition of the premises, according to the rights and interests of the parties, as declared by the judgment of the court, if the same can be done consistently with the interests of the parties; or, if the same cannot be so divided without manifest prejudice to the parties in interest, that they will fairly and impartially appraise the value of each piece or parcel of the premises sought to be divided, and make a true report to the court.” 735 ILCS 5/17–107 (West 1996).

In 
Tibbs v. Allen
, 27 Ill. 119 (1862), this court noted that the commissioners appointed by the circuit court in the partition action did not take the oath prescribed by statute. “They were not sworn to make partition, ‘in accordance with the judgment of the court as to the rights and interests of the parties,’ but only sworn to divide the land according to their own opinions of those rights and interests, without regard to the judgment of the court.” 
Tibbs
, 27 Ill. at 126-27. For this, and other reasons, this court reversed the decree for the sale of property and remanded for further proceedings. See also 
Sullivan v. Sullivan
, 42 Ill. 315, 319 (1866) (“After their appointment, and they have taken the oath required by the statute, then, and not till then, are they clothed with legal authority to act as commissioners”).

In the present case, the record confirms that Crowley did not take an oath as commissioner.

Third, Rosemary alleged that the circuit court was not authorized to sell the property because Crowley did not report that the property could not be divided in kind. Section 17–116 of the Act provides:

“Sale of premises not susceptible to division. When the whole or any of the premises sought to be partitioned cannot be divided without manifest prejudice to the owners thereof, and the commissioners appointed to divide the same so report, the court shall order the premises not susceptible of division to be sold at public sale, upon such terms and notice of sale as the court directs.” 735 ILCS 5/17–116 (West 1996).

Thus, it is only upon a finding by the commissioners that the property is not susceptible of division that the circuit court will order a sale of the property.

Crowley’s report states:

“While the first and second combinations resulted in relatively similar values, the third combination was substantially greater. And therefore, the appraiser, acting as the court appointed commissioner, was unable to recommend an equitable distribution of these assets among three parties 
unless
 other compensation was provided to the first two combinations and/or some concession was applied to the third.” (Emphasis added.)

Was Crowley thereby making an unequivocal statement that the property could not be partitioned without manifest prejudice to the parties in interest, or was Crowley suggesting that the property could be partitioned subject to additional compensation to some of the owners? If the actual finding was that the property could be divided subject to owelty payments, the circuit court could not direct that the property be sold. In so doing, the circuit court would have exceeded its authority under the statute.

In 
Peck v. Peck
, 16 Ill. 2d 268 (1959), this court held that a judgment of partition was invalid because it was not in conformity with the Partition Act. The court observed:

“The object of partition is to enable those who own property in common to sever their interests, so that each one may take possession of, enjoy, and improve his separate estate at his own pleasure. [Citations.] The law favors a division of land in kind, rather than a division of the proceeds of a sale thereof, and a sale under partition is proper only where a division of the premises cannot be made without prejudice to the rights of the interested parties. [Citations.] To implement this policy our statute provides for the appointment of commissioners to determine whether property is susceptible of division, [citation] and in construing such statute this court has said: ‘*** whether the proceeding for partition is by petition under the statute or by bill in chancery, an essential prerequisite to a decree authorizing a sale is the appointment of commissioners to make partition, and a report by them that the land is not susceptible of partition; *** section 16 of the Partition Act is mandatory, and *** where partition is sought by either mode, a decree for sale is erroneous, unless based upon a report of commissioners.’ [Citations.] Considering these established principles it is manifest that the court was in error in directing a sale of appellant’s interest in the manner prescribed.” 
Peck
, 16 Ill. 2d at 285-86.

This court remanded the cause to the trial court for the entry of a decree in conformity with the partition statute. See also 
Rosenbaum v. Rosenbaum
, 38 Ill. App. 3d 1, 15 (1976) (The court observed that a decree of sale is erroneous unless it is based on the report of a commissioner or commissioners. Commissioners were not appointed in the case, nor did the report of a commissioner precede the lower court’s order of sale. Therefore, the judgment of the court “did not include nor can it be construed to include a valid partition judgment”).

Returning to the present facts, the property at issue consisted of 409 acres of land. The very size of the property suggests that some division in kind would have been possible. As this court observed in considering a report that 720 acres of land could not be divided:

“It would require much proof to induce the belief that so much land could not be divided fairly and equally, according to quantity and quality, among seven claimants.” 
Tibbs
, 27 Ill. at 128.

Fourth, Rosemary alleged that the circuit court was not authorized to sell the property in any manner other than at public sale. Section 17–116 of the Act provides that “the court shall order the premises not susceptible of division to be sold at public sale.” 735 ILCS 5/17–116 (West 1996). The circuit court allowed the property to be listed exclusively with Dolan and Murphy. Contracts to purchase the property were submitted to Dolan and Murphy, and the property was eventually sold to Moser. There was no notice of the property’s sale to the public. Nor was there a sale at auction of the property. Thus, it appears that the circuit court did not follow the dictates of the statute in conducting the sale of the property.

The mechanics of the sale of the property in this case demonstrate the problems inherent in a sale which is not at public vendue. Inland’s contract to purchase the property was a matter of record in the proceeding and was file stamped by the clerk of the court on July 20, 1998. Moser’s contract to purchase the property was mailed to the clerk of the court the evening of August 18, 1998, and was presented to the circuit court at the hearing on August 19, 1998. The purchase price listed in Moser’s contract, $3,550,000, was only $50,000 more than the purchase price listed in Inland’s contract. Inland was not informed of Moser’s contract, and, consequently, Inland did not increase the purchase price listed in its contract. Moreover, the circuit court refused to reopen bidding on the property.

Three parties submitted contracts for the purchase of the property. These parties were vying for the right to construct new housing in an area undergoing substantial development. Surely, a public sale with all parties aware of the proposed bids would have maximized the returns to the owners of the property.

The majority purports to answer Rosemary’s argument in a footnote. See slip op. at 8 n.3. Therein, the majority notes that the circuit court had jurisdiction and authority over the parties and the property. The majority also notes that “a circuit court does not lose jurisdiction because it made a mistake in determining the facts, the law, or both.”

The majority notes correctly that a court may not lose jurisdiction because it makes a mistake in determining the facts or the law. 
People v. Davis
, 156 Ill. 2d 149, 156 (1993). However, Rosemary did not merely argue that the circuit court made a mistake in determining the facts or the law. Rosemary argued that the circuit court failed to follow the very statute empowering the court to sell the property. As this court observed in 
Davis
, “the power to render the particular judgment or sentence is as important an element of jurisdiction as is personal jurisdiction and subject matter jurisdiction.” Further, “a judgment or decree may be void where a court has exceeded its authority.” 
Davis
, 156 Ill. 2d at 156.

Thus, in 
People v. Arna
, 168 Ill. 2d 107 (1995), this court held void a trial court order which did not conform to a statutory requirement. The trial court had jurisdiction of the parties and subject matter. However, the trial court did not have the inherent authority to enter an order imposing concurrent terms on the defendant.

And in 
Armstrong v. Obucino
, 300 Ill. 140 (1921), this court found that a sale made contrary to statute, and a deed executed in pursuance of such sale, were void. In so doing, this court observed:

“The statement has very frequently been made that where a court has jurisdiction of the parties and the subject matter, its decree, however erroneous, can only be attacked on appeal or error; but the rule is subject to an exception equally well settled,–that a decree may be void because the court has exceeded its jurisdiction. The bill prayed for the enforcement of the lien by a sale beyond and contrary to the powers given by the statute for enforcing mechanics’ liens, and it does not follow that because the court had acquired jurisdiction of the parties and the subject matter it could make such a decree as was prayed for. Courts are limited in the extent and character of their judgments, and if they transcend their lawful powers their judgments and decrees are void and may be collaterally impeached wherever rights claimed under them are brought in question. The doctrine that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment or decree, however erroneous, cannot be collaterally assailed, is only correct when the court proceeds according to the established modes governing the class to which the case belongs and does not transcend in the extent and character of its judgment or decree the law or statute which is applicable to it. [Citations.] Where a court, after acquiring jurisdiction, has assumed to enter a decree for a sale which goes beyond the limits of the jurisdiction and transgresses the law the decree is void, and the sale based thereon is likewise an absolute nullity.” 
Armstrong
, 300 Ill. at 142-43.

See also 
In re M.M.
, 156 Ill. 2d 53, 64 (1993) (jurisdiction is “the power of the court to adjudge concerning the general question involved [citation], as well as the power to grant the particular relief requested [citations]. Every act of the court beyond that power is void”); 
People v. Wade
, 116 Ill. 2d 1 (1987); 
Woodward v. Ruel
, 355 Ill. 163, 173 (1933) (Stone, J., dissenting) (“One of the essentials of a valid judgment is that the court have jurisdiction to render that particular judgment. Where a court, after acquiring jurisdiction of the subject matter, transcends the limits of the jurisdiction conferred, its judgment so entered is void”); 
Maloney v. Dewey
, 127 Ill. 395, 402-03 (1889) (where a court, having jurisdiction of the person, and jurisdiction to adjudicate upon the subject matter, renders a judgment not authorized by law in that class of cases, under any possible proofs, its judgment is not an instance of mere misapplication of law to particular facts, or erroneous interpretation of rules in particular cases, but an attempt to exercise an authority which has no existence in the particular case).

To answer Rosemary’s contention, the majority must actually determine whether the circuit court exceeded its authority in ordering the sale of the property, and whether the circuit court’s failure to follow the Act rendered its judgment void. The majority is unwilling to do so.

Instead, citing 
In re Marriage of Mitchell
, 181 Ill. 2d 169 (1998), the majority suggests that I “overlook[ed] our recent discussion explaining the distinction between ‘void’ and ‘voidable’ judgments.” Slip op. at 14. The majority educates:

“In 
Mitchell
 we stated that ‘[t]he question whether a judgment is void or voidable depends on whether the court entering the challenged order possessed jurisdiction over the parties and the subject matter. [Citation.] If jurisdiction is lacking, any subsequent judgment of the court is rendered void ***.’ 
In re Marriage of Mitchell
, 181 Ill. 2d 169, 174 (1998), quoting 
People v. Davis
, 156 Ill. 2d 149, 155-56 (1993).

Significantly, the dissent does not dispute that the trial court in the present case had both subject matter jurisdiction and personal jurisdiction over the parties. For this reason, the judgment is not ‘void.’ This is true even if we were to assume that the trial court failed to strictly follow the provisions of the Act.” Slip op. at 14-15.

Thus, according to the majority, a judgment rendered by a court lacking the inherent power to make or enter the particular order involved is not “void” but merely “voidable.”

I note that 
Mitchell
 relied primarily upon 
Davis
, a decision which affirmed that “the power to render the particular judgment or sentence is as important an element of jurisdiction as is personal jurisdiction and subject matter jurisdiction.” 
Davis
, 156 Ill. 2d at 156. I also note that 
Mitchell
 nowhere states that it is overruling 
Davis
 or the precedent from which 
Davis
 is derived. See also 
Wade
, 116 Ill. 2d at 5; 
Woodward
, 355 Ill. at 173 (Stone, J., dissenting); 
Maloney
, 127 Ill. at 402. I am confident that 
Mitchell
 was not intended to overrule settled precedent on the elements of jurisdiction.

Assuming, however, that 
Mitchell
 created some confusion as to the continued validity of the requirement that a court have inherent power to make or enter the particular order involved, such confusion was dispelled in 
City of Chicago v. Roman
, 184 Ill. 2d 504, 510 (1998), a decision issued 10 months after 
Mitchell
, and one which the majority fails to acknowledge. In 
Roman
, 184 Ill. 2d at 510, this court reiterated that “[a] void judgment is one entered by a court that lacks, 
inter alia
, the inherent power to make or enter the particular order involved.” See also 
People ex rel. Waller v. McKoski
, 195 Ill. 2d 393, 401 (2001) (“Because the concurrent sentences imposed upon defendant by the circuit court were not authorized by section 5–8–4(b), those sentences are void”).

I submit that 
Mitchell
 is not this court’s latest pronouncement on jurisdiction. I also submit that it is the majority, not this dissent, which has failed to acknowledge recent precedent of this court.

The majority offers two distinctions. First, the majority states:

“
Davis
 discusses jurisdiction ‘in the context of criminal proceedings.’ 
Davis
, 156 Ill. 2d at 156. Criminal proceedings that involve the power to render judgments or sentences address a separate set of concerns not at issue in the present matter.” Slip op. at 15.

The majority does not elaborate on the nature of these “concerns” or explain why these “concerns” require a different application in the context of a criminal proceeding. Also, the majority does not cite any law in support of the distinction it seeks to draw.

I note that 
Davis
 cites 
Thayer v. Village of Downers Grove
, 369 Ill. 334, 339 (1938), a case involving special assessments and bonds, in support of the proposition that “the power to render the particular judgment or sentence is as important an element of jurisdiction as is personal jurisdiction and subject matter jurisdiction.” 
Davis
, 156 Ill. 2d at 156. I also note that 
Davis
 cites 
Armstrong
, 300 Ill. at 142-43, a mechanics’ lien case, in support of the proposition that “a judgment or decree may be void where a court has exceeded its jurisdiction.” 
Davis
, 156 Ill. 2d at 156. Thus, 
Davis
 does not draw a distinction between criminal and civil proceedings and does not provide support for the proposition advanced by the majority.

Further, 
Mitchell
, 181 Ill. 2d 169, the centerpiece of the majority’s analysis on jurisdiction, does not support a distinction between jurisdiction in criminal and civil proceedings. At issue in 
Mitchell
 was the validity of a child support order which expressed the support level as a percentage of income, instead of a dollar amount. As noted above, 
Mitchell
 relied primarily upon 
Davis
 in its discussion of jurisdiction. Thus, 
Mitchell
, a civil case, relied upon the holding of 
Davis
, a criminal case, without drawing any distinction between civil and criminal proceedings.

McKoski
, 195 Ill. 2d at 401, 
Roman
, 184 Ill. 2d at 510, 
Arna
, 168 Ill. 2d at 113, and
 Davis
, 156 Ill. 2d at 156, all stand for the proposition, as stated in 
Roman
, that: “A void judgment is one entered by a court that lacks, 
inter alia
, the inherent power to make or enter the particular order involved.” This holding cannot be overlooked or disposed of on the ground that 
Davis
 was a criminal proceeding.

Next, the majority draws a distinction between cases adopted before, and after, the reform to the judicial system in 1964. The majority concedes that the “inherent authority” requirement was a part of this state’s jurisprudence before 1964, and applied to the exercise of jurisdiction by our circuit courts. See slip op. at 14. However, the majority maintains that, with the implementation of the reform to the judicial system, the circuit courts derive jurisdiction from the constitution and need not act in conformance with statutory authority in order to exercise jurisdiction. The majority explains:

“The dissent mistakenly relies upon a rule of law not applicable to the present circumstances. The ‘inherent authority’ requirement existed before reform to the judicial system in 1964. Effective January 1, 1964, the General Assembly amended article VI and replaced limited jurisdiction: ‘Circuit Court[s] shall have unlimited original jurisdiction of all justiciable matters.’ Ill. Const. 1870, art. VI, §9 (amended 1964); accord Ill. Const. 1970, art. VI, §9 (‘Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction’). This amendment created a single integrated trial court vested with jurisdiction to adjudicate all controversies. [Citation.] Thus, the ‘inherent power’ requirement applies to courts of limited jurisdiction and administrative agencies.” Slip op. at 13.

The majority concludes that: “a circuit court is a court of general jurisdiction, which need not look to the statute for its jurisdictional authority.” Slip op. at 14.

This court has rejected the notion that a court of general jurisdiction, which derives its jurisdiction from the constitution, may proceed in derogation of statutory authority. In 
In re M.M.
, 156 Ill. 2d at 65, this court observed: “[I]t is by reason of our constitution that our circuit courts acquire power to adjudge ***.” However, “it is by reason of the statute that the justiciable matter exists,” and the circuit court must proceed within the strictures of the statute. 
In re M.M.
, 156 Ill. 2d at 65-66.

The distinction the majority draws is unavailing. To date, this court has steadfastly recognized that the circuit court must have the inherent power to make or enter the particular order involved. 
Roman
, 184 Ill. 2d at 510. This court has also recognized that “a judgment or decree may be void where a court has exceeded its authority.” 
Davis
, 156 Ill. 2d at 156, citing 
Armstrong
, 300 Ill. at 142-43.

The majority misapprehends my dissent. The majority states:

“The dissent maintains that the trial court lacked authority to order the sale because it failed to comply with the Act, and that this rendered the judgment ‘void.’ According to the dissent, failure to follow the Act is fatal to the circuit court’s jurisdiction. The Act, the dissent argues, gives the circuit court the ‘inherent authority’ to adjudicate the controversy and, therefore, failure to follow procedure under the Act divests the court of jurisdiction and renders the order ‘void.’ ” Slip op. at 13.

I make no pronouncement in my dissent as to the validity of the circuit court’s order and the resultant sale. My objective is more modest. I merely ask that the majority address Rosemary’s contention that the circuit court’s judgment, and the sale pursuant thereto, were void because the circuit court failed to comply with the Act in several aspects. The majority, however, “declines to address or outline those irregularities because they are secondary to Rule 305(j).” Slip op. at 12-13.

B. Fraud in Sale

In her appeal, Rosemary suggested that a fraud was perpetrated in the sale of the property to Moser. She directed this court’s attention to Moser’s access to information regarding the other contracts to purchase the property; the circumstances surrounding Moser’s last minute contract to purchase the property; the lack of notice to defendants regarding Moser’s contract to purchase the property; the representations made to Inland that the circuit court would approve Inland’s contract to purchase the property, and that Inland’s presence at the hearing was not necessary; the circuit court’s denial of Inland’s petition for leave to intervene; and the circuit court’s refusal to reopen the bidding when presented with an offer $50,000 higher than Moser’s.

The majority does not give voice to, or acknowledge Rosemary’s argument in any way. I am of the opinion, however, that this court has an affirmative duty to address this argument, for, if the argument is meritorious, it obviates all reasons for extending Rule 305(j) protection to this sale.

From my review of the record, this case appears troubled by irregularities. Plaintiff’s complaint for partition was not verified as required by section 17–101 of the Act.
(footnote: 5) See 735 ILCS 5/17–101 (West 1996). Plaintiff averred in November, 1995, that he and defendants held title to the property as tenants in common. In actuality, the estate did not release its interest in the property until January 31, 1997. The circuit court did not ascertain and declare the rights and interest of the parties prior to appointing a commissioner to partition the property. See 735 ILCS 5/17–105, 5/17–108 (West 1996). The circuit court did not require that the commissioner take an oath “fairly and impartially to make partition” of the property. See 735 ILCS 5/17–107 (West 1996). The commissioner’s report did not contain an unequivocal finding that the property could not be divided. See 735 ILCS 5/17–109 (West 1996). The property was not sold at public vendue.

These irregularities aside, the circuit court ordered the sale of the property as one unit. The property consisted of three parcels of land, with extensive acreage. In his report, Crowley valued the property at $4,859,000 if the three parcels were sold individually, compared to $4,500,000 if the property was sold as a unit. Parcel 1 was located a mile away from Parcels 2 and 3. Thus, the sale of the property as a unit could not be justified by contiguity of the parcels. In 
Meeker v. Evans
, 25 Ill. 283 (1861), this court observed:

“It would seem, that when several distinct tracts of land are ordered to be sold by the master, under a decree, it is the duty of that officer to sell each tract separately, unless it is evident that the land will be more valuable in one than in several tracts. [Citation.] It is believed that this rule is of general if not uniform application. *** When several tracts of land are sold 
en masse
, for a gross sum, on the same biddings, the presumption is, that it must have been sold for a smaller amount than they would have brought had each tract been offered separately. When offered 
en masse
, persons of limited capital are necessarily precluded from competing at the sale. And when such a sale is made, and an objection is interposed on that ground, to its confirmation, it will be set aside; unless the evidence clearly shows that it has produced more money than it would have done had it been offered in separate parcels.” 
Meeker
, 25 Ill. at 285.

See also 
Bowen v. Bowen
, 265 Ill. 638, 640 (1914) (“It is the duty of the master in making a sale to offer the land in parcels if the same is susceptible of division. If the master fails in the performance of his duty in this regard and the lands are thereby sold for an inadequate price the sale will be set aside upon a proper showing”).

The circuit court ordered the sale of the property as one unit even though the evidence showed that it would take longer to sell the property as a unit, and the property would fetch a higher price if the parcels were sold individually. This irregularity in the sale of the property, along with the others noted above, fuels concerns that the interest of defendants in the property was not protected.

In 
Meeker
, 25 Ill. at 283, this court also stated:

“In conducting judicial sales good faith must be observed, as well by the purchaser as by the officer, intrusted by the court and the law, to enforce its judgments and decrees, in that mode. The rights of all parties to the proceeding must be regarded and properly protected. When, by a violation of the requirements of the law, by the officer conducting a sale, or by the purchaser at the biddings, the rights of the owner are sacrificed or injuriously affected, the court will interpose, and set aside the sale, and require it to be again offered. Any fraud by the purchaser, by which competition is prevented, or any neglect of duty on the part of the officer producing that result, is regarded as sufficient grounds to order a re-sale.” 
Meeker
, 25 Ill. at 284.

And, in 
Tibbs
, this court observed:

“When it is considered, that titles to valuable lands can be divested by this statutory proceeding, it is essential the statute should be observed, the courts not tolerating any essential departure from it.” 
Tibbs
, 27 Ill. at 128.

I could not agree more with this court’s assessment that the authority to partition lands also entails a duty to protect the rights and interest of all parties to the lands.

The majority does acknowledge my concerns regarding the possibility of fraud in this matter. In footnote 4 of the opinion, the majority states:

“The dissent also maintains that additional irregularities suggest fraud in the sale. The dissent fails to explain how this overcomes Rule 305(j) and Rosemary’s failure to file a motion to stay in the appellate court.” Slip op. at 11 n.4.

Since the majority requests an explanation, I provide one. This court is a court of equity and justice; this court has an affirmative duty not to condone fraud. Litigants seeking the protection of this court must do equity. Likewise, under our Rule 305(j), a purchaser seeking the protection of this court must have acted in good faith in the purchase of the property.

This court affords protection to 
bona fide
 purchasers at judicial sales because these purchasers rely upon the court processes and are entitled to a measure of security in their purchases. Where a sale is procured through fraud or collusion between a plaintiff and a purchaser, the purchaser is not only aware of the irregularities in the sale but is an active participant thereto. By what right does that purchaser lay claim to protection of the fraudulent sale? He has not relied upon the court processes, but upon his own actions in effectuating the purchase of the property. To afford him the protection of this court is to place a premium upon his misconduct. And what of the rights of the defendant who has been deprived of his property? It must be remembered after all that “[w]hilst the law guards the rights of 
bona fide
 purchasers at judicial sales with scrupulous care, it will protect owners from being deprived of their property by proceedings unauthorized by law.” 
Morris v. Hogle
, 37 Ill. 150, 155 (1865); see also 
Brod v. Brod
, 390 Ill. 312, 325 (1945) (“While the right to partition is an absolute one, [citation] a court of equity will not permit the proceeding to be used to circumvent and avoid the established principles of law and public policy and will, in the exercise of its general, equitable jurisdiction, control the proceedings so as to protect the rights of all parties concerned.”); 
Bydalek v. Bydalek
, 396 Ill. 65, 71 (1947); 
Barnes v. Freed
, 342 Ill. 73, 78 (1930) (where consideration paid for land was inadequate, purchaser at a judgment sale could retain his advantage only by showing that he acquired his title by proceedings free from fraud or irregularity).

This court has long espoused the principle that a party may obtain relief, on the ground of fraud, against a void as well as a voidable judgment. 
Elting v. First National Bank of Biggsville
, 173 Ill. 368, 391 (1898), citing 
Nelson v. Rockwell
, 14 Ill. 375 (1853). The majority eschews this principle without explaining why this court should place its imprimatur upon, and afford protection to, a sale which may be fraudulent.

Explanations aside, the majority fails to notice that its approach to the fraud issue is somewhat inconsistent with the reasons it advances in support of the circuit court’s judgment, and the sale pursuant thereto. The majority states:

“Public policy of this state supports our conclusion. Illinois law protects the integrity and finality of property sales, including judicial sales. [Citations.] Indeed, it extends this protection to 
purchasers who without notice at the time of the purchase buy in good faith
. This finality and permanence is relied on by both purchasers and others in connection with the purchase of the property, including financial institutions, title insurers, realtors, and tenants. Absent this policy, no person would purchase real property involved in a judicial proceeding, if afterwards he incurred the hazard of losing the property 
due to facts unknown to him at the time of the sale
.” Slip op. at 12-13. (Emphases added.)

Thus, the majority recognizes that Illinois law affords protection to good-faith purchasers, that is “purchasers who without notice at the time of the purchase buy in good faith.” Further, the majority recognizes that this court extends protection to a good-faith purchaser in order to protect the purchaser from the “hazard of losing the property due to facts unknown to him at the time of the sale.” However, the majority refuses to address Rosemary’s contention that the sale of the property was fraudulent. Instead, the majority extends the protection of our Rule 305(j) to Moser’s purchase of the property. The inconsistency could not be more apparent.

CONCLUSION

Rosemary argued that the judgment of partition, and the sale pursuant thereto, were void because the circuit court did not comply with the requirements of the Act. The majority answers that Rule 305(j) precludes Rosemary from contesting the validity of the partition sale. However, Rosemary’s argument called into question whether the circuit court exceeded its statutory authority and whether there was a final judgment in the circuit court. If the circuit court’s judgment, and the resulting sale, are void, Rule 305(j) does not apply, for it is a requirement of the rule that the property passed pursuant to a final judgment. A void judgment may be attacked either directly or indirectly at any time. 
Davis
, 156 Ill. 2d at 155.

In addition, Rosemary questioned whether the sale of the property to Moser was fraudulent. While I do not imply that the sale was fraudulent, the record presents sufficient facts to merit consideration of this issue. In the event due consideration leads to the conclusion that the sale of the property to Moser was fraudulent, I, for one, could not endorse or protect the sale.

I believe this court is duty-bound to protect the rights of all parties to the partition action. The rights of one owner must not be sacrificed or injuriously affected to benefit another. Likewise, the rights of the owner must not be compromised to benefit one who is not a good faith purchaser at a judicial sale. Where it appears that the party seeking partition of the land has colluded with the purchaser to effectuate a fraudulent purchase, that purchase must be set aside.

This court can only fulfill its responsibilities to the owners of the land by examining questions of jurisdiction, and exhibiting intolerance to all manners of fraud and collusion. The majority believes otherwise. In extending Rule 305(j) protection to the present sale, the majority overrules long settled precedent regarding the elements of jurisdiction, and clarifies that fraud is not a sufficient ground to withhold Rule 305(j) protection from a purchaser. My disagreement could not be greater. Accordingly, I dissent.

JUSTICES McMORROW and KILBRIDE join in this dissent.

FOOTNOTES
1:     
1
The Illinois partition act provides that the court must appoint three commissioners to assess the feasibility of partitioning the property. 735 ILCS 5/17–106 (West 1998). However, the Act allows the court discretion to appoint one commissioner, rather than three. 735 ILCS 5/17–106 (West 1998) (“The court may in its discretion appoint one commissioner who shall have all the rights and powers”).

2:     
2
Rosemary appeared 
pro se
 in this matter, with two exceptions: she retained counsel to represent her during the partition trial and to represent her during her appeal to the appellate court.

3:     
3
Section 12–149 of the Code of Civil Procedure is consistent with Rule 305(j). Section 12–149 states:

“The right, title and interest of any purchaser acquired at a sale made under or pursuant to any judgment in a proceeding in which the court had jurisdiction of the subject matter and of the parties, and who was not a party to such proceeding *** shall not be affected by any reversal, modification or order setting aside such judgment made in any proceeding to review such judgment, unless at the time of such sale, assignment or pledge, an appeal was pending which operated as a stay of enforcement of the judgment ***.” 735 ILCS 5/12–149 (West 1998).

Section 12–149 contains only one discernable difference: it requires jurisdiction in the circuit court, an implicit requirement under Rule 305(j). 

Rosemary contended during oral argument that the Kendall County court lacked jurisdiction because it rendered “erroneous orders and judgments.” Even if Rosemary’s contention that the trial court rendered erroneous judgments is correct, a circuit court does not lose jurisdiction because it made a mistake in determining the facts, the law, or both. 
In re Marriage of Mitchell
, 181 Ill. 2d 169, 174-75 (1998). Further, under the Illinois Constitution, circuit courts are courts of general jurisdiction. Ill. Const. 1970, art. VI, §9. In the instant matter, the proceeding was before the Kendall County circuit court concerning Kendall County property. Thus, the Kendall County court had jurisdiction and authority over the parties and the subject matter.

4:     
4
Tangentially, we note that Rosemary’s notice of appeal directed against, in part, the October 30 order denying her motion to stay does not satisfy Rule 305(d). A notice of appeal is not an application of stay within the meaning of this court’s rules. Rather, our rules clearly distinguish between a notice of appeal and motion to stay. Compare 155 Ill. 2d R. 303(b) with 155 Ill. 2d R. 305. Further, the mere nature and effect of the notice of appeal and motion to stay illustrate that they are not synonymous. A notice of appeal is a procedural device filed with the trial court, that when timely filed vests jurisdiction in the appellate court in order to permit review of the judgment such that it may be affirmed, reversed, or modified. 
Berg
, 193 Ill. 2d at 189. A motion to stay impacts the enforcement and effect of the judgment, but does not challenge the sufficiency of that judgment.

The dissent also maintains that additional irregularities suggest fraud in the sale. The dissent fails to explain how this overcomes Rule 305(j) and Rosemary’s failure to file a motion to stay in the appellate court.

5:     
5
Although the complaint purports to be verified, it was not subscribed and sworn to before a public notary. See 
Hough v. Weber
, 202 Ill. App. 3d 674, 692 (1990).